No. 24-6640

IN THE UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

**ALEXANDER PANELLI,**

Plaintiff–Appellant,

**v.**

**TARGET CORPORATION,**

Defendant–Appellee.

On Appeal from the United States District Court
for the Southern District of California

No. 3:24-cv-01218-H-DEB
Hon. Marilyn L. Huff, Senior District Judge

**BRIEF FOR THE STATE OF CALIFORNIA AS
AMICUS CURIAE IN SUPPORT OF APPELLANT
AND IN SUPPORT OF REVERSAL**

ROB BONTA
Attorney General of California
NICKLAS A. AKERS
Senior Assistant Attorney General
MICHELE VAN GELDEREN
Supervising Deputy Attorney General

REBECCA MORSE (314853)
HUNTER LANDERHOLM (294698)
Deputy Attorneys General
 300 S. Spring St., Ste. 1702
 Los Angeles, CA 90013
 Telephone: (213) 269-6515
 Rebecca.Morse@doj.ca.gov
*Attorneys for Amicus Curiae the
State of California*

# TABLE OF CONTENTS

**Page**

INTRODUCTION AND STATEMENT OF INTEREST .............................................. 1

BACKGROUND ......................................................................................... 3

ARGUMENT .............................................................................................. 6

    I.      Literally False Advertising is Illegal in California Because it is Likely to Deceive the Public .............................. 6

    II.    *Moore v. Trader Joe's Co.* Does Not Support the District Court's Decision to Dismiss the Complaint in this Case ........ 13

    III.    Whether Deceptive Advertising Would Mislead a Reasonable Consumer is a Fact-Intensive, Real-World Inquiry ..................................................................................... 19

        A.    Consumer Deception Cases are Inappropriate for Resolution at the Pleading Stage ................................. 19

        B.    The "Reasonable Consumer" Protected by California Consumer Laws is an Ordinary Consumer ................................................................. 21

CONCLUSION ......................................................................................... 25

i

# TABLE OF AUTHORITIES

**Page**

CASES

*Barquis v. Merchants Collection Assn.*
7 Cal. 3d 94 (1972) .................................................................... 12

*Bell v. Publix Super Markets, Inc.*
982 F.3d 468 (7th Cir. 2020) ............................................... 9, 23

*Brady v. Bayer Corp.*
26 Cal. App. 5th 1156 (2018) ................................... 9, 10, 22, 23

*Chapman v. Skype, Inc.*
220 Cal. App. 4th 217 (2013) ................................................. 20

*Colgan v. Leatherman Tool Group, Inc.*
135 Cal. App. 4th 663 (2006) ........................................... 21, 22

*Davidson v. Kimberly-Clark Corp.*
889 F.3d 956 (9th Cir. 2018) ............................................ 10, 12

*Freeman v. Time, Inc.*
68 F.3d 285 (9th Cir. 1995) .................................................... 18

*FTC v. Standard Education Soc.*
302 U.S. 112 (1937) ................................................................ 12

*Hart v. Massanari*
266 F.3d 1155 (9th Cir. 2001) ............................................... 14

*Kahn v. Walmart Inc.*
107 F.4th 585 (7th Cir. 2024) ........................................... 23, 24

*Kwikset Corp. v. Superior Court*
51 Cal. 4th 310 (2011) .......................................................... 7, 9

*Lavie v. Proctor & Gamble Co.*
105 Cal. App. 4th 496 (2003) ....................................... 8, 12, 21

*Leoni v. State Bar*
39 Cal. 3d 609 (1985) ............................................................ 19

*McGinity v. Proctor & Gamble Co.*
69 F.4th 1093 (9th Cir. 2023) ................................................... 8

*McKell v. Washington Mutual, Inc.*
142 Cal. App. 4th 1457 (2006) .............................................. 19

*Moore v. Mars Petcare US, Inc.*
966 F.3d 1007 (9th Cir. 2020) .................................................. 9

# TABLE OF AUTHORITIES
## (continued)

**Page**

*Moore v. Trader Joe's Co.*
4 F.4th 874 (9th Cir. 2021) .......... 1, 2, 5, 6, 8, 9, 11, 13, 14, 15, 16, 17, 18

*Morrison v. Ross Stores, Inc.*
No. 18-cv-02671-YGR, 2019 WL 11770849
(N.D. Cal. May 30, 2019) ................................................................ 20

*Nationwide Biweekly Admin. Inc. v. Superior Court*
9 Cal. 5th 279 (2020) ................................................................ 7, 8

*Nelson v. Am. Textile Co.*
No. 23-CV-1879-CAB-SBC
(S.D. Cal. Feb. 27, 2024), Dkt. No. 26 ................................................ 20

*People v. Johnson & Johnson*
77 Cal. App. 5th 295 (2022) ........................................................ 8, 17

*Reid v. Johnson & Johnson*
780 F.3d 952 (9th Cir. 2015) ....................................................... 10, 19

*Rushing v. Williams-Sonoma, Inc.*
No. 16-cv-01421-WHO, 2016 WL 4269787
(N.D. Cal. Aug. 15, 2016) ........................................................... 21

*Salazar v. Target Corp.*
83 Cal. App. 5th 571 (2022) .......................................................... 22

*Salazar v. Walmart, Inc.*
83 Cal. App. 5th 561 (2022) ...................................................... 22, 23

*Shaeffer v. Califia Farms, LLC*
44 Cal. App. 5th 1125 (2020) .......................................................... 8

*Skinner v. Ken's Foods, Inc.*
53 Cal. App. 5th 938 (2020) ..................................................... 9, 17, 21

*Welk v. Beam Suntory Imp. Co.*
124 F. Supp. 3d 1039 (S.D. Cal. 2015) ................................................ 13

*Whiteside v. Kimberly-Clark Corp.*
108 F.4th 771 (9th Cir. 2024) ...................................................... 8, 17

*Williams v. Gerber Products Co.*
552 F.3d 934 (9th Cir. 2008) .................................................... 8, 13, 19

## TABLE OF AUTHORITIES
### (continued)

Page

**STATUTES**

15 U.S.C. § 45 *et seq.* ...............................................................................4

California Business and Professions Code § 17200 *et seq.*
.................................................... 1, 2, 3, 4, 6, 7, 9, 10, 11, 14, 19, 20, 21

California Business and Professions Code § 17500 *et seq.*
.......................................................... 1, 4, 7, 10, 11, 14, 19, 20

California Civil Code § 1750 *et seq.* ............................................. 1, 2, 3, 4, 7

**COURT RULES**

Federal Rule of Appellate Procedure 29(a) .....................................................1

Federal Rule of Civil Procedure 12(b)(6)................................................... 3, 5

**OTHER AUTHORITIES**

Allan J. Kimmel, *Psychological Foundations of Marketing* (2d
ed. 2018) ...................................................................................... 24

Lauren E. Willis, *Decisionmaking and the Limits of Disclosure:
The Problem of Predatory Lending: Price*, 65 Md. L. Rev.
707 (2006)...................................................................................... 23

**INTRODUCTION AND STATEMENT OF INTEREST**

The California Attorney General, on behalf of the State of California, submits this brief under Federal Rule of Appellate Procedure 29(a), to assist the Court in analyzing and applying the standard for pleading false advertising claims under California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 *et seq.* (UCL), False Advertising Law, Cal. Bus. & Prof. Code § 17500 *et seq.* (FAL), and Consumers Legal Remedies Act, Cal. Civ. Code § 1750 *et seq.* (CLRA). The district court in this case misapplied the "reasonable consumer" standard common to all three of these California statutes and improperly dismissed Panelli's claims on the pleadings. In reaching this result, the district court relied heavily on a misreading of *Moore v. Trader Joe's Co.*, 4 F.4th 874 (9th Cir. 2021), effectively holding that *Trader Joe's* immunizes certain false statements. The district court's judgment should be reversed.

While California takes no position on the ultimate merits of this case, it has a strong interest in the enforcement of its consumer protection laws. As the state's chief law officer, the Attorney General directly enforces the Unfair Competition and False Advertising Laws and is interested in the appropriate application of all of California's consumer protection statutes. This interest necessarily extends to the ability of private plaintiffs to have their properly pleaded claims heard before a factfinder, in California and federal courts.

1

The district court dismissed Panelli's claims under the Unfair Competition Law and Consumers Legal Remedies Act at the pleading stage, as a matter of law and without leave to amend, based on its finding that no reasonable consumer would be deceived by Target's allegedly false advertising of bedsheets with high thread counts that are "physically impossible to achieve." This was error.

First, California consumer protection laws expressly prohibit false advertising. The district court's decision directly contradicts this prohibition by holding that if false advertising claims promise something impossible, they cannot deceive a reasonable consumer or violate California law. Panelli has sufficiently pleaded false advertising claims, including by alleging that Target advertises 288 thread count sheets as having an 800 thread count. As alleged, this advertising claim is literally false; under California's consumer protection statutes, that is sufficient to state a claim at the pleading stage.

Second, while the district court held that this Court's opinion in *Trader Joe's* dictated its dismissal of Panelli's claims, that case is inapposite for multiple reasons. First, unlike here, *Trader Joe's* dealt with advertising statements this Court held were in fact true. The Court in *Trader Joe's* also found that several contextual factors were relevant to consumers' interpretation of the advertising in that case, none of which have been established here. Further, the district court mistakenly read *Trader Joe's* as holding that "impossible" advertising claims

2

cannot violate California law. Yet no such exception to California's statutory ban on false advertising exists. The Court should take the opportunity to correct this misapprehension, which would create a perverse incentive for retailers to exaggerate false advertising claims to evade liability.

Third, even if this Court were not convinced that the advertising at issue here is, as alleged, literally false, the district court still improperly dismissed Panelli's complaint under Federal Rule of Civil Procedure 12(b)(6) as a matter of law. As a number of published opinions have emphasized, false advertising and consumer deception cases are fact-intensive and rarely appropriate for disposition at the pleading stage. Additionally, the district court failed to meaningfully engage with the reasonable consumer standard, which accounts for the fact that consumers are not omniscient and often make quick decisions to shortcut purchasing choices—leaving them especially vulnerable to advertising intended to attract their attention through overstated or outright false claims.

### BACKGROUND

Plaintiff Alexander Panelli brought this putative consumer protection class action against Target Corporation, a national retailer, alleging violations of California's Unfair Competition Law and Consumers Legal Remedies Act. Panelli's primary factual allegation is that Target falsely advertises the thread counts of certain bedsheets it sells, by representing that they have higher thread

3

counts than they in fact have. Panelli also alleges that "'[t]hread count'. . . is one of the key elements in the marketing (and ultimately the pricing) of bedsheets," that "[h]igh thread counts have come to mean high quality sheets," and that there is a "significant extra cost associated with a high thread count." 3-ER-262 ¶ 7. His operative complaint pleads that Target has violated all three prongs of the UCL prohibiting "unfair," "fraudulent," and "unlawful" conduct, and additionally alleges predicate UCL "unlawful" violations of California's FAL, CLRA, and the Federal Trade Commission Act, 15 U.S.C. § 45 *et seq.*[1] 3-ER-281–282 ¶¶ 60, 63. Panelli also separately pleads violations of multiple sections of the CLRA. 3-ER-283–284 ¶ 74.

All of these causes of action seek relief for the same deceptive conduct. Namely, Panelli alleges that "all of the 100% cotton sheet sets advertised or otherwise marketed by TARGET that claim a thread count of 600 or higher are falsely advertised[,]" 3-ER-270–271 ¶ 24, for two reasons. First, Panelli alleges that independent testing confirms a bedsheet set advertised by Target as a "100% cotton," "800 Thread Count" sheet set in fact has a "total thread count of 288, which is 64% lower than the advertised thread count of 800." 3-ER-265–267 ¶ 15–18. Second, Panelli alleges that "it is physically impossible for cotton threads to be

---

[1] The Attorney General discusses here only the California statutes at issue and expresses no opinion on Panelli's predicate UCL claim under the Federal Trade Commission Act.

fine enough to allow for 600 or more threads in a single square inch of 100% cotton fabric," meaning that all of Target's advertising of all-cotton sheets claiming a higher thread count must be false. 3-ER-270–271 ¶ 24.

Target moved to dismiss Panelli's claims under Federal Rule of Civil Procedure 12(b)(6), arguing, among other things, that he failed to allege a sufficiently specific factual basis for his claims. Target also argued, in the alternative, that even if Panelli's claims were credited as true, they would fail, on the basis that a reasonable consumer would not be deceived by a product—such as "a 100% cotton sheet set advertised as having a thread count of 800"—that "does not exist because, according to Plaintiff, it cannot exist." 2-ER-114. In support of this argument, Target cited to this Court's decision in *Trader Joe's*, reasoning that "because, per [*Trader Joe's*], a reasonable consumer would take the alleged impossibility of such a product into account in interpreting the product label[,]" this consumer could not be misled by Panelli's thread count claims. 2-ER-114.

Target's alternative argument is the only argument the district court directly addressed in its order dismissing Panelli's claims, holding that "[n]o reasonable consumer would interpret Defendant's 100% cotton bedsheet advertising and labeling 'as promising something that is impossible to find.'" 1-ER-10 (quoting *Trader Joe's*, 4 F.4th at 883). While the district court acknowledged "that several district courts have found similar thread count allegations sufficient to state a

claim," it noted that it did not find their decisions persuasive, on the basis that these courts were either not compelled to follow or failed to analyze *Trader Joe's*. 1-ER-10–11. Ultimately, the district court grounded its dismissal of Panelli's claims almost exclusively in *Trader Joe's*—and specifically, in the district court's understanding of that case as standing for the proposition that a plaintiff cannot state a claim under California's consumer protection statutes where an advertisement makes an impossible claim. 1-ER-11 ("The Court's dismissal of Plaintiff's UCL and CLRA claims is based on Plaintiff's allegation that it is physically impossible for 100% cotton fabric to have a thread count of 600 or more.")

## ARGUMENT

### I.  LITERALLY FALSE ADVERTISING IS ILLEGAL IN CALIFORNIA BECAUSE IT IS LIKELY TO DECEIVE THE PUBLIC

Under California law, consumers are entitled to take advertising claims at face value. They are not required to be wary of advertising claims, or suspect that they might not be true. Certainly, and contrary to the district court's decision, they are not expected to ferret out when an advertisement is falsely promising something "impossible." Instead, California's consumer protection statutes are "set forth in broad and open-ended language that is intended . . . to reach any novel or creative scheme of false or misleading advertising that a deceptive business may

6

devise," *Nationwide Biweekly Admin. Inc. v. Superior Court*, 9 Cal. 5th 279, 308

(2020), and they expressly and unequivocally prohibit false advertising.

Specifically, California's Unfair Competition Law prohibits any "unlawful,

unfair, or fraudulent business act or practice," "untrue or misleading advertising,"

and any act that violates the False Advertising Law. Cal. Bus. & Prof. Code

§ 17200. The False Advertising Law independently "declar[es] that it is unlawful

for any person or business to make or distribute any statement to induce the public

to enter into a transaction 'which is untrue or misleading, and which is known,

or . . . should be known, to be untrue or misleading.'" *Nationwide Biweekly*, 9 Cal.

5th at 306 (quoting Cal. Bus. & Prof. Code § 17500). And the Consumers Legal

Remedies Act, which prohibits enumerated "unfair methods of competition and

unfair or deceptive acts or practices," similarly bars false or misleading advertising

statements in a variety of contexts.[2]

---

[2] For example, the CLRA prohibits misrepresenting that goods have characteristics or benefits they do not have, Cal. Civ. Code § 1770(a)(5); "[r]epresenting that goods or services are of a particular standard, quality, or grade. . . if they are of another," Cal. Civ. Code § 1770(a)(7); "[a]dvertising goods or services with the intent not to sell them as advertised," Cal. Civ. Code § 1770(a)(9); and "[r]epresenting that the subject of a transaction has been supplied in accordance with a previous representation when it has not," Cal. Civ. Code § 1770(a)(16). The California Supreme Court has recognized that all four of these CLRA subsections, cited by Panelli, "govern[] false advertising." *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 317 (2011).

To state a claim for false advertising under these statutes, "it is necessary only to show that 'members of the public are likely to be deceived.'" *Nationwide Biweekly*, 9 Cal. 5th at 309 (citations omitted). This inquiry is "judged by the effect it would have on a reasonable consumer." *Lavie v. Proctor & Gamble Co.*, 105 Cal. App. 4th 496, 506–07 (2003); *accord, e.g.*, *Williams v. Gerber Products Co.*, 552 F.3d 934, 938 (9th Cir. 2008). A reasonable consumer is "the 'ordinary consumer acting reasonably under the circumstances[.]'" *People v. Johnson & Johnson*, 77 Cal. App. 5th 295, 319 (2022) (quoting *Shaeffer v. Califia Farms, LLC*, 44 Cal. App. 5th 1125, 1135 (2020)).[3]

While much of the case law addresses the fact that California's consumer protection statutes prohibit "advertising which[,] although true, is either actually misleading or which has a capacity, likelihood or tendency to deceive or confuse the public," in the first instance they also clearly bar "advertising which is false." *Williams*, 552 F.3d at 938 (citations omitted); *see also McGinity v. Proctor &*

---

[3] A qualification to this general rule, not applicable here, is that where advertising "is targeted to a particular group or type of consumers, either more sophisticated or less sophisticated than the ordinary consumer, the question whether it is misleading to the public will be viewed from the vantage point of members of the targeted group[.]" *Johnson & Johnson*, 77 Cal. App. 5th at 319 (citations omitted). This Court has characterized *Trader Joe's* as a decision concerned with a "niche product marketed to a small, sophisticated class of customers[.]" *See Whiteside v. Kimberly-Clark Corp.*, 108 F.4th 771, 782 (9th Cir. 2024). By contrast, this case involves bedsheets, an ordinary mass-market retail product that effectively all consumers have at home.

*Gamble Co.*, 69 F.4th 1093, 1097 (9th Cir. 2023) ("The California Supreme Court has recognized that these statutes prohibit explicitly false advertising[.]"). Accordingly, whereas "'[l]iteral truth can sometimes protect a product manufacturer from a misleading claim . . . there is no protection for literal falseness.'" *Moore v. Mars Petcare US, Inc.*, 966 F.3d 1007, 1017 (9th Cir. 2020) (quoting *Brady v. Bayer Corp.*, 26 Cal. App. 5th 1156, 1166–67 (2018)).[4]

Numerous cases have upheld the straightforward principle that "[m]embers of the public are likely to be deceived by advertising that is false" in violation of state consumer protection laws. *Skinner v. Ken's Foods, Inc.*, 53 Cal. App. 5th 938, 948 (2020). For example, in *Kwikset*, "the California Supreme Court reversed dismissal of a UCL claim challenging defendants' practice of selling locks with 'Made in U.S.A.' labels when some screws and pins in the assembly were made in Taiwan." *Moore*, 966 F.3d at 1017 (citing *Kwikset*, 51 Cal. 4th at 329–332). In *Brady*, the

---

[4] While theoretically, a literally false advertising claim might be so absurd or patently ridiculous as to deceive no one, California case law is not replete with examples of such claims. Even the Court of Appeal's analysis in *Brady* addressing advertising claims that "run[] counter to ordinary common sense or the obvious nature of the product" such that they are "fit for disposition at the demurrer stage of the litigation," cites to cases involving either literally true claims or advertising that made no definite, disprovable factual statements at all. 26 Cal. App. 5th at 1165–66. It is some of these same cases, not cases alleging literal falsity, this Court cited to in *Trader Joe's*, *see* 4 F.4th at 883–84, as exemplars of the proposition that "where plaintiffs base deceptive advertising claims on unreasonable or fanciful interpretations of labels or advertising, dismissal on the pleadings may well be justified[,]" *id.* at 882–83 (quoting *Bell v. Publix Super Markets, Inc.*, 982 F.3d 468, 477 (7th Cir. 2020)).

California Court of Appeal held that plaintiff's UCL and CLRA claims alleging that "One A Day"-branded vitamin gummies actually had a recommended serving size of two gummies daily were sufficient to survive demurrer, including because "in the context of its gummie product, the One A Day brand name is literally false." 26 Cal. App. 5th at 1172.

This Court's cases applying these California statutes, as they must, follow that state court precedent. In *Reid v. Johnson & Johnson*, for example, this Court considered a false advertising claim alleging that a product prominently labeled as containing "No Trans Fat" in fact contained trans fats, and found this claim was sufficient to survive a motion to dismiss under the UCL, FAL, and CLRA. 780 F.3d 952, 955–59 (9th Cir. 2015). Likewise, in *Davidson v. Kimberly-Clark Corp.*, this Court reversed the district court's dismissal, at the pleading stage, of UCL, FAL, and CLRA claims alleging that "flushable" wipes were falsely advertised, on the basis that the operative complaint "adequately alleged that [Appellee's] use of the word 'flushable' was false because the Scott Wipes [Appellant] purchased did not disperse as a truly flushable product would have." 889 F.3d 956, 965 (9th Cir. 2018).

In each of these cases, plaintiffs alleged in substance that straightforward advertising claims—"Made in U.S.A."; "One A Day"; "No Trans Fat"; "flushable"—were literally false, and violated California consumer protection

10

laws; in each of these cases, courts deemed plaintiffs' allegations sufficient. No additional, independent showing of a likelihood of consumer deception was required. Panelli likewise alleges literal falsity here. He claims that Target falsely advertises a certain "100% cotton" sheet set as having an "800 thread count" when in fact it has a "total thread count of 288[.]" 3-ER-267 ¶¶ 17–18. And he alleges that it is not physically possible for all-cotton sheets to have a thread count of 600 or higher. 3-ER-270–271 ¶ 24. He does not allege that Target's thread count claims are true but nonetheless misleading; he pleads instead that they are flatly, demonstrably false. If Panelli's allegations are true—as this Court must assume at this stage—they are enough to state claims under the UCL, FAL, and CLRA.

The district court elided this analysis and dismissed Panelli's claims as a matter of law, based on its finding that if, as he alleges, Target's thread counts are "physically impossible to achieve," then "no reasonable consumer would interpret [Target's] advertising and labeling" of 100% cotton bedsheets with thread counts higher than 600 as true. 1-ER-9–10. Beyond California's clear, statutory prohibition of false statements, on its face there is nothing to "interpret" about a claim that bedsheets have an 800 thread count; either they do or, as alleged here, they do not. Likewise, while the district court noted that "a plaintiff's unreasonable assumptions about a product's label will not suffice" to establish consumer deception, 1-ER-8 (quoting *Trader Joe's*, 4 F.4th at 882), conversely it is

11

reasonable for an ordinary consumer reading a product labeled "800 thread count" to assume that this statement is accurate.

While the district court's decision obliges consumers to interrogate the advertising directed at them, California law instead puts the burden on product sellers to tell the truth. As this Court has recognized, "California has decided that its consumers have a right, while shopping in a store selling consumer goods, to rely upon the statements made on a product's packaging." *Davidson*, 889 F.3d at 961. "In a society which enlists a variety of psychological and advertising stimulants to induce the consumption of goods," *Barquis v. Merchants Collection Assn.*, 7 Cal. 3d 94, 111 (1972), California has enacted legislation to affirmatively protect consumers from false and misleading advertising.

Accordingly, its consumer protection laws do not require a "reasonable consumer" to "be wary or suspicious of advertising claims." *Lavie*, 105 Cal. App. 4th at 510; *see also FTC v. Standard Education Soc.*, 302 U.S. 112, 116 (1937) ("The fact that a false statement may be obviously false to those who are trained and experienced does not change its character . . . There is no duty resting upon a citizen to suspect the honesty of those with whom he transacts business.") (cited by *Lavie v. Proctor & Gamble, Co.*, 105 Cal. App. 4th at 509). Expecting consumers to mistrust even the most binary, fact-based advertising claims, as the district

court's decision does, is contrary to both the policy behind California's statutory consumer protection regime and its clear, outright ban on false advertising.

## II. *MOORE V. TRADER JOE'S CO.* DOES NOT SUPPORT THE DISTRICT COURT'S DECISION TO DISMISS THE COMPLAINT IN THIS CASE

The district court wrongly held that the Court's decision in *Trader Joe's* necessitated its dismissal of Panelli's claims. Not only is *Trader Joe's* factually unlike this case, but the district court mistakenly ascribed to it a non-existent rule that "impossible" advertising claims cannot mislead consumers. This view directly contradicts California's ban on false advertising, and, if more broadly adopted, would have the perverse effect of incentivizing product sellers to make increasingly brazen false advertising claims.

As an initial matter, the district court should not have relied so heavily on a single decision of this Court in a case about California law.[5] While this Court's precedent is binding on the district court, no California court has approvingly cited *Trader Joe's* or relied on its analysis. Thus, *Trader Joe's* must be considered alongside well-established California state court precedents, for instance regarding

---

[5] The district court's decision also cites *Welk v. Beam Suntory Imp. Co.*, which dismissed California consumer deception claims on the pleadings after classifying the advertising statements at issue as non-actionable puffery. 124 F. Supp. 3d 1039, 1044 (S.D. Cal. 2015). Target has not asserted that its thread count representations are mere puffery, the district court did not consider whether they constitute puffery, and, as alleged, they are the type of "factual misrepresentations" this Court has held are not puffery. *See Williams*, 523 F.3d at 939 n.3.

the fact-intensive nature of consumer deception claims and the likelihood of literally false advertising to deceive consumers.

In any event, *Trader Joe's* does not support the district court's decision to dismiss the complaint in this case. In *Trader Joe's*, this Court affirmed dismissal of UCL, FAL, and CLRA claims alleging that grocer Trader Joe's falsely advertised a product as "100% New Zealand Manuka Honey" when it was only partially derived from Manuka flower nectar. The district court considered itself "bound by [*Trader Joe's*] holding and reasoning." 1-ER-10–11 (citing *Hart v. Massanari*, 266 F.3d 1155, 1171 (9th Cir. 2001)). Yet in assessing whether a decision is binding precedent, "a court considers not merely the 'reason and spirit of cases' but also 'the letter of particular precedents,'" including "not only the rule announced, but also the facts giving rise to the dispute." *Hart*, 266 F.3d at 1170. Neither the facts nor the reasoning of *Trader Joe's* applies to this case, and the district court erred in determining that *Trader Joe's* governed its assessment of Target's advertising claims.

First, unlike this case, the decision in *Trader Joe's* rested on this Court's initial determination that Trader Joe's Manuka honey representations were in fact "accurate." *Trader Joe's*, 4 F.4th at 881, 885. The Court based this conclusion on the specialized regulatory context governing honey labeling, and specifically, on FDA guidelines that permit honey, a naturally heterogeneous product, to be labeled

14

by reference to its "chief floral source" even if a portion of it is derived from other floral sources. *Id.* As the Court noted, even the *Trader Joe's* plaintiffs conceded that federal regulations might "authorize Trader Joe's to market each and every tablespoon of honey in the product as 'Manuka Honey' notwithstanding that 40% of the honey is non-manuka.'" *Trader Joe's*, 4 F.4th at 885. Here, Panelli alleges that Target's thread count claims are literally false. Additionally, there is nothing in the record to suggest that a regulatory regime comparable to the unique one the Court relied on in *Trader Joe's* applies here, such that it would somehow be accurate for Target to label 288 thread count sheets as "800 thread count."

Second, the district court was wrong to rely on the Court's discussion of "impossibility" in *Trader Joe's* in dismissing Panelli's claims. The district court analogized directly to *Trader Joe's* and its recognition of "the impossibility of making a honey that is 100% derived from one floral source" in finding that in this case, no reasonable consumer would interpret Target's thread count advertising as promising "something that is impossible to find." 1-ER-9–10 (quoting *Trader Joe's*, 4 F.4th at 883). Yet this portion of the *Trader Joe's* decision addresses consumer knowledge of the impossibility of producing pure Manuka honey, not the fact of this impossibility itself. Further, the Court's estimation that "consumers would generally know that it is impossible to exercise complete control over where bees forage" was only one of three contextual inferences the Court considered in

15

its analysis; it also looked to the comparatively low price of Trader Joe's product, and to information on its label indicating that it contained a relatively low concentration of Manuka honey according to a recognized industry grading system. *Trader Joe's*, 4 F.4th at 883–85. It was the Court's collective analysis of all three of these inferences, which it surmised consumers would make "from the product itself"—and not a wholesale rejection of false advertising theories premised on "impossible" advertising claims—that led the Court to affirm dismissal in *Trader Joe's*. *Id.*

Further, the Court's analysis in *Trader Joe's* addressing whether the claim "100% New Zealand Manuka Honey" would mislead a reasonable consumer flowed from its initial determination that this claim was in fact true. *Trader Joe's*, 4 F.4th at 881. The Court explained: "Even though Trader Joe's front label is accurate under the FDA's guidelines, Plaintiffs maintain that '100% New Zealand Manuka Honey' could nonetheless mislead consumers into thinking that the honey was '100%' derived from Manuka flower nectar. Under the consumer protection laws of California . . . claims based on deceptive or misleading marketing must demonstrate that a 'reasonable consumer' is likely to be misled by the representation." *Id.* By contrast, Panelli has sufficiently pleaded that Target's thread count claims are flatly false, and the district court's analysis of whether he has stated a claim under California's consumer protection laws should have ended

16

there. As discussed above, California courts hold that literally false advertising is likely to deceive by virtue of its falsity. *See, e.g., Skinner*, 53 Cal. App. 5th at 948; *Johnson & Johnson*, 77 Cal. App. 5th at 319.

Even if it had been appropriate for the district court to scrutinize the facts behind Panelli's claims at the pleading stage, the type of product inferences the Court identified in *Trader Joe's* do not exist here. First, whereas bees make honey "without input from Trader Joe's or any other manufacturer," *Trader Joe's*, 4 F.4th at 883, bedsheets are industrially manufactured for commercial sale. Whatever general knowledge consumers may have about honey production, it is a distinct leap to assume, as a matter of law, that they have a similar fluency in bedsheet manufacturing. *See Whiteside*, 108 F.4th at 783 ("Unlike bees (at issue in *Trader Joe's*), which are familiar to anyone who has encountered vegetation, most people likely have not contemplated how baby wipes are made.") Second, while in *Trader Joe's* the Court found that consumers would infer from how inexpensive the grocer's "100% New Zealand Manuka Honey" was that it contained "a relatively lower concentration of honey derived from Manuka flower nectar," *Trader Joe's*, 4 F.4th at 884, Panelli alleges that the price of bedsheets sold by Target rises in proportion to their purported thread counts, 3-ER-265–270 ¶¶ 15, 17, 19–23. Third, unlike in *Trader Joe's*, where the Court found the existence of a reference to an industry rating of the product's Manuka concentration was enough to "put[] a

17

reasonable consumer on notice that it must represent *something* about the product," *id.* at 884 (emphasis in original), nothing in the record here suggests that Target somehow conspicuously qualifies its thread count representations where it makes them. *See Freeman v. Time, Inc.*, 68 F.3d 285, 289–90 (9th Cir. 1995) (holding that a reasonable consumer would not be misled by advertising statements because unavoidable qualifying language appeared directly alongside them).

Finally, the district court's mistaken reading of *Trader Joe's* would establish an unprecedented and strange framework for analyzing false advertising: one that would hold advertisers liable for making technically possible but false product claims, while shielding from liability those who make false but technically impossible claims. Purveyors of snake oil would be thrilled. Yet extreme examples are not necessary to demonstrate the irrational incentives and bizarre consequences of such a regime. Sticking just to the factual universe of this case, accepting the district court's reasoning would, for instance, allow one retailer to advertise 288 thread count sheets as "800 thread count" sheets, while subjecting a competitor to liability for advertising the very same sheets as "500 thread count" sheets. This is not, and cannot be, the law in California.

### III. WHETHER DECEPTIVE ADVERTISING WOULD MISLEAD A REASONABLE CONSUMER IS A FACT-INTENSIVE, REAL-WORLD INQUIRY

#### A. Consumer Deception Cases are Inappropriate for Resolution at the Pleading Stage

The district court dismissed Panelli's claims on the pleadings as a matter of law despite his factual allegations that Target's thread count representations are literally false. As discussed above, this was error; sufficiently pleaded allegations that an affirmative representation is in fact false should easily survive a motion to dismiss. Yet even if the Court disagrees that Panelli's allegations do not make out a case of literal falsity in violation of California consumer protection statutes, dismissal of consumer deception claims at the pleading stage is almost always improper due to their fact-intensive nature.

The reasonable consumer standard applied under the UCL, FAL, and CLRA "raises questions of fact that are appropriate for resolution on a motion to dismiss only in 'rare situations.'" *Reid*, 780 F.3d at 958 (quoting *Williams*, 552 F.3d at 939). This is because evaluating advertising's "capacity, likelihood or tendency to deceive or confuse[,]" *Leoni v. State Bar*, 39 Cal. 3d 609, 626 (1985), generally requires the "consideration and weighing of evidence from both sides." *McKell v. Washington Mutual, Inc.*, 142 Cal. App. 4th 1457, 1472 (2006). Accordingly, dismissal on the pleadings is appropriate "only if the facts alleged in the complaint, and facts judicially noticed, compel the conclusion as a matter of law that

19

consumers are not likely to be deceived." *Chapman v. Skype, Inc.*, 220 Cal. App. 4th 217, 226–27 (2013).

Here, in dismissing Panelli's claims on the pleadings as a matter of law, the district court implicitly substituted its own assessment of what reasonable consumers know (namely, about bedsheet manufacturing and thread counts) for the careful consideration and weighing of evidence that instead should follow discovery. Whatever the ultimate outcome of this case, California court precedents counsel that Panelli is entitled to the opportunity to develop and present evidence in support of his allegations that Target's thread count representations are likely to deceive a reasonable consumer.

Indeed, as the district court acknowledged, 1-ER-10–11, district courts considering claims similar to those pleaded here, including under California consumer protection statutes and courts within this circuit, have allowed them to proceed past the pleading stage. *See, e.g., Nelson v. Am. Textile Co.*, No. 23-CV-1879-CAB-SBC (S.D. Cal. Feb. 27, 2024), Dkt. No. 26 (denying a motion to dismiss plaintiff's UCL and CLRA claims alleging that defendant falsely advertised bedsheets as 1250 thread count sheets); *see also Morrison v. Ross Stores, Inc.*, No. 18-cv-02671-YGR, 2019 WL 11770849, at *1–2 (N.D. Cal. May 30, 2019) (denying a motion to dismiss plaintiffs' UCL, FAL, and CLRA claims alleging that defendant falsely advertised bedsheets with inflated thread counts);

20

*Rushing v. Williams-Sonoma, Inc.*, No. 16-cv-01421-WHO, 2016 WL 4269787, at *7 (N.D. Cal. Aug. 15, 2016) (denying a motion to dismiss plaintiff's UCL claim alleging that defendants advertised bedsheets with inflated thread counts). The same result is warranted here.

### B. The "Reasonable Consumer" Protected by California Consumer Laws is an Ordinary Consumer

Allowing consumer deception cases to proceed past the pleadings is important because how reasonable consumers interpret commercial messaging in the marketplace is not always obvious. Further, limiting dismissal to "rare situations" acknowledges that courts cannot assume reasonable consumers are technical experts in all fields who act with full knowledge or analytical rigor when evaluating advertising claims in real-world situations.

Indeed, courts applying California's consumer protection statutes have long recognized that reasonable consumers are ordinary members of the public who may lack the time, motivation, and background to peer beyond the claims an advertisement makes. Under California law a reasonable consumer is not "required to be 'versed in the art of inspecting and judging a product . . . [or] the process of its preparation or manufacture.'" *Skinner*, 53 Cal. App. 5th at 949 (quoting *Colgan v. Leatherman Tool Group, Inc.*, 135 Cal. App. 4th 663, 682 (2006)). Neither must a reasonable consumer be "exceptionally acute and sophisticated" about advertising claims. *Lavie*, 105 Cal. App. 4th at 509 (citation omitted). Finally,

21

California courts consider the experience of "ordinary" consumers who act "reasonably," but evaluate reasonableness in light of the surrounding "circumstances." *See Colgan*, 135 Cal. App. 4th at 682.

In applying this standard at the pleading stage, courts have increasingly pointed to insights about real-world consumer behavior. For example, in the California Court of Appeal's review in *Brady* of claims that the front-label brand name "One A Day" misled consumers into believing this vitamin's serving size was one gummy per day, the court discounted the back label's disclosure of the actual daily serving of two gummies. 26 Cal. App. 5th at 1172. The court rejected the notion that "reasonable consumers of vitamins are back-label scrutinizers[]" as "untenable[,]" noting that while "many people—including some judges and lawyers—would make such an inquiry[,]" "other consumers—knowing they have very little scientific background[,]" would not. *Id.* at 1174.

The California Court of Appeal's recent *Salazar* decisions similarly emphasize the centrality of real-world consumer knowledge and behavior to the "reasonable consumer" standard. *Salazar v. Walmart, Inc.*, 83 Cal. App. 5th 561 (2022); *Salazar v. Target Corp.*, 83 Cal. App. 5th 571 (2022). In reversing pleading-stage dismissals in both cases, which involved allegations that baking chips were misleadingly marketed, the Court of Appeal emphasized the importance of considering evidence when weighing difficult-to-predict questions of consumer

22

behavior. *Salazar* emphasized that applying the reasonable consumer standard requires evaluating "how consumers *actually behave*—how they perceive advertising and how they make decisions." *Salazar v. Walmart*, 83 Cal. App. 5th at 567 (emphasis added) (quoting *Bell*, 982 F.3d at 481). And, echoing *Brady*, the court distinguished real-world consumer perception from the type of judicial analysis courts typically engage in at the pleading stage: "These are matters of fact, subject to proof that can be tested at trial, even if as judges we might be tempted to debate and speculate further about them." *Id.*

In *Kahn v. Walmart Inc.*, the Seventh Circuit reiterated its consumer behavior analysis from *Bell* and provided further support for evaluating expectations about consumer behavior with caution at the pleading stage. 107 F.4th 585, 595 (7th Cir. 2024). As the court opined, "[it] is well known that human cognitive abilities are not perfect or infinite. We have limited time, computational skills, and memories, and we rationally use mental shortcuts to deal with those limits." *Id.* at 595.[6]

Consequently, "[w]hen determining reasonable consumer behavior for purposes of consumer protection law," courts "should consider the behavior of real

---

[6] Substantial, established behavioral science supports the idea that real-life consumers take shortcuts. For example, information overload can confuse consumers or promote reliance on heuristic decision-making, causing consumers to simplify a decision by examining only certain aspects of it. Lauren E. Willis, *Decisionmaking and the Limits of Disclosure: The Problem of Predatory Lending: Price*, 65 Md. L. Rev. 707, 766–68 (2006). Similarly, consumers may forgo exhaustive product investigation for time savings. *Id.* at 742.

consumers[.]" *Id.* at 597. While real-world consumers may exercise "a low degree of care" in making everyday purchases, that "does not make consumers unreasonable" for purposes of the reasonable consumer standard. *Id.* Instead, "it makes them human, and even economically rational when search costs and transaction costs are included in the utility calculus. But it also makes them vulnerable to exploitation by unfair and deceptive practices." *Id.*[7]

These cases stand for the ultimately unremarkable proposition that the reasonable consumer is a real-world consumer. They explain why expectations for how consumers must reasonably interpret marketing messages should be developed in light of an understanding of the real-life circumstances that shape consumer decision-making, in the context of the fast-paced purchase decisions made by consumers every day. Because evidence can shed light on what consumers understand and how they really behave, consumer deception cases inherently present significant issues of fact that should nearly always survive the pleadings.

Panelli's complaint advances precisely the kind of fact-specific allegations implicating real-world consumer behavior that are best tested through considered

---

[7] Consumers take shortcuts and make snap decisions. "Given all the competitive stimuli in a typical supermarket, the average package has about one-tenth of a second to make an impression on the shopper." Allan J. Kimmel, *Psychological Foundations of Marketing* 90–91 (2d ed. 2018).

analysis of evidence developed and submitted by both parties. At a minimum, Panelli's claims should not have been summarily dismissed on the pleadings in deference to an "impossibility" test that finds no support in California law.

## CONCLUSION

The district court's judgment should be reversed.

Dated: March 12, 2025

Respectfully submitted,

ROB BONTA
Attorney General of California
NICKLAS AKERS
Senior Assistant Attorney General
MICHELE VAN GELDEREN
Supervising Deputy Attorney General
HUNTER LANDERHOLM
Deputy Attorney General

*s/Rebecca Morse*
REBECCA MORSE
Deputy Attorney General
*Attorneys for Amicus Curiae the State of California*

25

## UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

### Form 8. Certificate of Compliance for Briefs

*Instructions for this form:* *http://www.ca9.uscourts.gov/forms/form08instructions.pdf*

**9th Cir. Case Number(s)** 24-6640

I am the attorney or self-represented party.

**This brief contains** 5,897 **words, including** 0 words manually counted in any visual images, and excluding the items exempted by FRAP 32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

○ complies with the word limit of Cir. R. 32-1.

○ is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

◉ is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

○ is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

○ complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:

☐ it is a joint brief submitted by separately represented parties.
☐ a party or parties are filing a single brief in response to multiple briefs.
☐ a party or parties are filing a single brief in response to a longer joint brief.

○ complies with the length limit designated by court order dated _____.

○ is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** s/ Rebecca Morse   **Date** March 12, 2025

*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at forms@ca9.uscourts.gov*

**Form 8** *Rev. 12/01/22*