No. 24-6640

IN THE

# United States Court of Appeals
# for the Ninth Circuit

ALEXANDER PANELLI,

*Plaintiff-Appellant*,

v.

TARGET CORPORATION,

*Defendant-Appellee*.

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF CALIFORNIA
NO. 3:24-CV-01218-H-DEB
THE HONORABLE MARILYN HUFF

## BRIEF OF APPELLEE TARGET CORPORATION

Michael J. Duvall
Dentons US LLP
601 S. Figueroa Street, Suite 2500
Los Angeles, CA 90017
(213) 623-9300
michael.duvall@dentons.com

Grant Ankrom
Dentons US LLP
101 S. Hanley Rd., Suite 600
Clayton, MO 63105
(314) 241-1800
grant.ankrom@dentons.com

*Counsel for Target Corporation*

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1(a), Target Corporation states that it has no parent corporation and no publicly-held entity owns ten percent or more of its stock.

Dated: June 5, 2025          DENTONS US LLP

By: /s/ *Michael J. Duvall*
Michael J. Duvall
Attorneys for Defendant-Appellee
Target Corporation

i

# **TABLE OF CONTENTS**

Page

INTRODUCTION.................................................................................................1

STATEMENT OF JURISDICTION.......................................................................3

ISSUES PRESENTED..........................................................................................4

STATEMENT OF THE CASE..............................................................................5

      A.    Panelli's Amended Complaint .....................................................5

      B.    Procedural History ......................................................................7

      C.    The District Court's Decision .....................................................9

SUMMARY OF THE ARGUMENT .....................................................................10

STANDARD OF REVIEW ..................................................................................12

ARGUMENT.......................................................................................................14

     I.    Panelli Waived His Right to Challenge the District Court's Basis for Dismissal by Ignoring and Refusing to Respond to Target's Motion to Dismiss Argument Supporting It. ........................14

     II.    Accepting Panelli's "Physical Impossibility" Allegation as True, the District Court Properly Held That Panelli's Interpretation of the "800 Thread Count" Representation Was Unreasonable. ..............................................................................17

          A.    Under *Moore*, and in Light of His Own Allegations, Panelli Did Not and Could Not Establish That the Reasonable Consumer Would Be Misled in the Manner Alleged. ...................................................................................18

          B.    Dismissal of False or Misleading Advertising Claims at the Pleading Stage Is Proper Under These Circumstances.......25

     III.    Panelli Failed to State a Claim for Misrepresentation for Additional Reasons as Well. .............................................................26

A.    Panelli's Physical Impossibility Allegation Cannot Support His Claims. ...................................................28

B.    Panelli's "Independent Testing" Allegation Is Inapposite to Other Bedsheets Sold by Target. .........................................31

C.    Panelli's Vague Allegation of "Independent Testing" Is Factually Insufficient to Support His Claim That the Bedsheets He Purchased Are Not "800 Thread Count" as Labeled. ..................................................................................33

IV.    Dismissal With Prejudice Was Warranted. .........................................38

A.    Leave to Amend Was Properly Denied as Futile......................39

B.    In Any Event, Evaluation of the Remaining Factors Confirms That Leave to Amend Was Properly Denied............40

**CONCLUSION**.................................................................................................**43**

iii

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*AMA Multimedia, LLC v. Wanat*,
    970 F.3d 1201 (9th Cir. 2020) ...........................................................................16

*Ang v. Bimbo Bakeries USA, Inc.*,
    No. 13-cv-01196, 2014 WL 1024182 (N.D. Cal. Mar. 13, 2014).....................32

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009).............................................................................13, 17, 28

*Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of
    Carpenters*,
    459 U.S. 519 (1983)....................................................................................14, 27

*B&G Foods N. Am., Inc. v. Embry*,
    29 F.4th 527 (9th Cir. 2022) .............................................................................16

*Becerra v. Dr Pepper/Seven Up, Inc.*,
    945 F.3d 1225 (9th Cir. 2019) ...............................................................17, 19, 25

*Beets v. Cnty. of Los Angeles*,
    669 F.3d 1038 (9th Cir. 2012) .........................................................................15

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)..........................................................................................28

*Brader v. Bayer Corp.*,
    26 Cal. App. 5th 1156 (2018) ..........................................................................18

*Bruno v. American Textile Co.*,
    No. 22-cv-2937, 2023 WL 6976826 (N.D. Ill. Oct. 23, 2023).........................24

*Caravan Canopy Int'l v. Home Depot U.S.A., Inc.*,
    No. 19-cv-1072, 2021 WL 831028 (C.D. Cal. Feb. 25, 2021)..........................15

*Cheslow v. Ghirardelli Chocolate Co.*,
    472 F. Supp. 3d 686 (N.D. Cal. July 17, 2020) ................................................25

*D'Augusta v. Am. Petroleum Inst.*,
117 F.4th 1094 (9th Cir. 2024) ..................................................................13

*Daly v. Wonderful Co.*,
No. 24-cv-1267, 2025 WL 1331750 (N.D. Ill. May 7, 2025) ...........................36

*Davis v. HSBC Bank Nevada, N.A.*,
691 F.3d 1152 (9th Cir. 2012) ...................................................................25

*Do v. Tri City Healthcare Dist.*,
No. 19-cv-2253, 2020 WL 7318119 (S.D. Cal. Dec. 11, 2020).............38, 41, 42

*Dougherty v. Source Nats., Inc.*,
148 F. Supp. 3d 831 (E.D. Mo. 2015) ..........................................................35

*Ebner v. Fresh, Inc.*,
838 F.3d 958 (9th Cir. 2016) .....................................................12, 13, 18, 20, 25

*Effinger v. Ancient Organics LLC*,
657 F. Supp. 3d 1290 (N.D. Cal. 2023)........................................................33

*Forouzesh v. CVS Pharm.*,
No. 18-cv-4090, 2019 WL 652887 (C.D. Cal. Feb. 15, 2019)...........................35

*Fresno Unified Sch. Dist. v. K.U. ex rel. A.D.U.*,
980 F. Supp. 2d 1160 (E.D. Cal. 2013) ...............................................40, 41, 43

*Greer v. Strange Honey Farm, LLC*,
114 F.4th 605 (6th Cir. 2024) ....................................................................36

*Hawes v. Macy's Inc.*,
346 F. Supp. 3d 1086 (S.D. Ohio 2018) ...................................................24, 37

*Jackson v. Gen. Mills, Inc.*,
No. 18-cv-2634, 2019 WL 4599845 (S.D. Cal. Sept. 23, 2019) .......................32

*Jackson v. Kaiser Permanente*,
No. 18-cv-8176, 2019 WL 10893916 (C.D. Cal. Jan. 8, 2019) ........................34

*Jones v. Regents of Univ. of Cal.*,
No. 21-cv-7844, 2022 WL 1137089 (N.D. Cal. Apr. 18, 2022) .......................15

*Kearns v. Ford Motor Co.*,
   567 F.3d 1120 (9th Cir. 2009) ...................................................................27, 31

*La Barbera v. Olé Mexican Foods Inc.*,
   No. 20-cv-2324, 2023 WL 4162348 (C.D. Cal. May 18, 2023) ......19, 20, 21, 25

*Lancaster v. American Textile Co.*,
   719 F. Supp. 3d 204 (N.D.N.Y. 2024)...................................................................24

*Lopez v. Zarbee's, Inc.*,
   No. 22-cv-4465, 2023 WL 210878 (N.D. Cal. Jan. 17, 2023) ...........................32

*McGinity v. Procter & Gamble*,
   69 F.4th 1093 (9th Cir. 2023) ...........................................................................25

*McKinney v. Corsair Gaming, Inc.*,
   No. 22-cv-312, 2022 WL 2820097 (N.D. Cal. July 19, 2022)...........................33

*Moore v. Trader Joe's Co.*,
   4 F.4th 874 (9th Cir. 2021) ........................................................................*passim*

*Myers v. Wakefern Food Corp.*,
   No. 20-cv-8470, 2022 WL 603000 (S.D.N.Y. Mar. 1, 2022) ...........................36

*Neubronner v. Milken*,
   6 F.3d 666 (9th Cir. 1993) ..................................................................................28

*Reddy v. Litton Indus. Inc.*,
   912 F.2d 291 (9th Cir. 1990) ........................................................................38, 40

*Robles v. GOJO Indus., Inc.*,
   No. 22-55627, 2023 WL 4946601 (9th Cir. Aug. 3, 2023)...............................19

*Salameh v. Tarsadia Hotel*,
   726 F.3d 1124 (9th Cir. 2013) ............................................................................13

*Semegen v. Weidner*,
   780 F.2d 727 (9th Cir. 1985) ..............................................................................27

*Shorter v. Los Angeles Unified Sch. Dist.*,
   No. 13-cv-3198, 2013 WL 6331204 (C.D. Cal. Dec. 4, 2013) ..........................15

vi

*Sims v. Opportunity Fin.*,
  No. 20-cv-4730, 2021 WL 1391565 (N.D. Cal. Apr. 13, 2021) ..................28, 29

*Somers v. Apple, Inc.*,
  729 F.3d 953 (9th Cir. 2013) .......................................................................31

*Soo Park v. Thompson*,
  851 F.3d 910 (9th Cir. 2017) .......................................................................29

*Sprewell v. Golden State Warriors*,
  266 F.3d 979 (9th Cir. 2001) .......................................................................26

*Steinberg v. Icelandic Provisions, Inc.*,
  No. 21-cv-5568, 2022 WL 220641 (N.D. Cal. Jan. 25, 2022) ...........................25

*Thomas v. Walmart Inc.*,
  720 F. Supp. 3d 650 (N.D. Ill. 2024)................................................24, 32, 37, 38

*Turner v. City & Cnty. of San Francisco*,
  788 F.3d 1206 (9th Cir. 2015) .......................................................................13

*United States v. Corinthian Colls.*,
  655 F.3d 984 (9th Cir. 2011) ....................................................................38, 39

*Vess v. Ciba-Geigy Corp. USA*,
  317 F.3d 1097 (9th Cir. 2003) .......................................................................27

*Visendi v. Bank of Am., N.A.*,
  733 F.3d 863 (9th Cir. 2013) ....................................................................16, 17

*Walcoff v. Innofoods USA, Inc.*,
  No. 22-cv-1485, 2023 WL 3262940 (S.D. Cal. May 4, 2023)..........................25

*Ward v. Crow Vote LLC*,
  No. 21-cv-1110, 2022 WL 17882162 (C.D. Cal. Oct. 11, 2022)......................42

*Warren v. Fox Family Worldwide, Inc.*,
  328 F.3d 1136 (9th Cir. 2003) ................................................................13, 31

*Weisbuch v. Cnty. of Los Angeles*,
  119 F.3d 778 (9th Cir. 1997) .......................................................................26

vii

*Welk v. Bean Suntory Import Co.*,
    124 F. Supp. 3d 1039 (S.D. Cal. Aug. 21, 2015)..............................................9, 21

*Werbel v. Pepsico, Inc.*,
    No. 09-cv-4456, 2010 WL 2673860 (N.D. Cal. July 2, 2010)...........................25

**Statutes**

28 U.S.C. § 1291 ...............................................................................................4

28 U.S.C. § 1332(d) ...........................................................................................3

28 U.S.C. § 1441 ...............................................................................................3

28 U.S.C. § 1446................................................................................................3

Unfair Competition Law,
    Cal. Bus. & Prof. Code §§ 17200, *et seq.*.............. 4, 7, 10, 12, 18, 25, 27, 39, 44

Consumer Legal Remedies Act,
    Cal. Civ. Code §§ 1750, *et seq.* ....................... 4, 7, 10, 12, 13, 18, 25, 27, 39, 44

**Rules**

Fed. R. App. P. 4(a)(1)(A) ...................................................................................4

Fed. R. Civ. P. 9(b) ........................................................................7, 15, 27, 28, 30

Fed. R. Civ. P. 12(b)(6)......................................................... 3, 4, 7, 12, 13, 15, 28

viii

## INTRODUCTION

The reasonable consumer makes purchases based on their understanding of a product's attributes, including based on its labeling, advertising, and context, as well as other information that is reasonably within their orbit. In doing so, the reasonable consumer is not divorced from their common sense, experience, or reality, and does not expect to find products that possess attributes that are "impossible" to achieve. In other words, the reasonable consumer does not interpret product labels to promise attributes that are impossible.

The reasonable consumer standard requires that consumers interpret product labels in a manner consistent with common sense and reality. Here, Plaintiff-Appellant Alexander Panelli's claims rest on the assertion that it is "physically impossible" to achieve the advertised thread count in 100% cotton bedsheets using a particular methodology. Panelli and Amicus Curiae the State of California attempt to conflate literal falsity with factual impossibility to avoid the logical conclusion reached by the District Court. The District Court's order did not bless advertising that is literally false. Rather, following an evaluation of *Panelli's allegations*, the District Court properly applied this Court's precedent from *Moore v. Trader Joe's Co.*, 4 F.4th 874 (9th Cir. 2021) by holding that Panelli's "theory of consumer deception here is implausible and based on an unreasonable interpretation of the representations at issue." 1-ER-9. The District Court's holding was based on

1

*Panelli's own allegations* that it is "physically impossible," using a particular thread counting methodology, to achieve a thread count higher than 600 in the context of 100% cotton bedsheets. Put differently, the problem with Panelli's claims was *not* the (alleged) degree of falsity of the product labeling, but rather Panelli's alleged interpretation of that labeling in light of his simultaneously alleged "impossibility" of that interpretation.

Moreover, Panelli's Amended Class Action Complaint suffered further pleading deficiencies that rendered dismissal appropriate and otherwise support affirmance here. His claims are supported by only inconsistent and perfunctory allegations of "independent testing" purportedly revealing a lower-than-advertised thread count and the supposed "physical impossibility" of achieving a thread count higher than 600, with the latter being the only allegation on which Panelli relies to attempt to rope into his lawsuit *all* 100% cotton bedsheets advertised as 600+ thread count sold by Target, regardless of brand, manufacturer, or other labeling attributes. But neither allegation provides a plausible factual basis for Panelli's claim. And despite a prior amendment, repeated requests from Target to sufficiently describe the alleged testing (or just attach the supposed report to the Complaint), and additional opportunities to amend with full knowledge of Target's arguments supporting dismissal, Panelli chose to stand on his deficient pleading and make conclusory assertions that it is physically impossible for any 100% cotton bedsheet

2

to achieve a thread count of 600 or more, and he seeks to extend this theory to all such sheets sold by Target, irrespective of manufacturer, brand, or material differences. Given these circumstances, in addition to the futility of amending, the District Court's decision to dismiss Panelli's claims with prejudice and without leave to amend was proper and should be affirmed.

But—before the Court even reaches those issues—Panelli faces a further fundamental problem, again created by his stubborn refusal to acknowledge the weaknesses in his claims: waiver. Before the District Court, Target briefed the application of *Moore* in its motion to dismiss. Panelli chose to ignore it, effectively conceding the argument and thereby waiving his right to contest it then and now. Dismissal should be affirmed.

## STATEMENT OF JURISDICTION

Target removed the underlying action from the Superior Court of the State of California, County of San Francisco, to the United States District Court for the Northern District of California pursuant to 28 U.S.C. §§ 1332(d), 1441, 1446. 3-ER-307–312. The underlying action was subsequently transferred to the Southern District of California. 1-ER-5.

On October 28, 2024, the Southern District of California granted Target's motion to dismiss Panelli's Amended Class Action Complaint pursuant to Federal

3

Rule of Civil Procedure 12(b)(6) with prejudice and without leave to amend (1-ER-3–12), giving this Court jurisdiction pursuant to 28 U.S.C. § 1291.

Judgment was entered in favor of Target on October 28, 2024. 1-ER-2. Panelli filed a timely Notice of Appeal of the District Court's dismissal order on October 29, 2024. *See* Fed. R. App. P. 4(a)(1)(A).

## ISSUES PRESENTED

The issues presented for review are:

I.      Whether Panelli waived his right to contest the District Court's application of *Moore v. Trader Joe's Co.*, 4 F.4th 874 (9th Cir. 2021) by ignoring the issue at the District Court in response to Target's motion to dismiss.

II.     Whether the District Court correctly held that Panelli's theory of deception was implausible as a matter of law because a reasonable consumer would not interpret a representation to promise an attribute that, based on Panelli's own allegations, is physically impossible to achieve.

III.    Whether dismissal of the action should be affirmed because Panelli's threadbare "independent testing" and "physical impossibility" allegations were insufficient to state claims under California's Unfair Competition Law or California's Consumer Legal Remedies Act.

4

IV. Whether the District Court was within its discretion in denying Panelli leave to further amend his Amended Class Action Complaint due to futility and his prior opportunities to amend.

## STATEMENT OF THE CASE

### A. Panelli's Amended Complaint

Target is a retailer that sells a variety of bedsheets advertised as having differing thread counts and other attributes from numerous brands and manufacturers. *See* 3-ER-262, ¶¶ 6-7; 3-ER-265–266, ¶ 15; 3-ER-268–270, ¶¶ 20-23.

On September 12, 2023, Alexander Panelli allegedly visited Target to make a cash purchase of a single item: a "100% cotton sateen" set of queen-sized Threshold Signature sheets. 3-ER-265–266, ¶ 15; 3-ER-306. The sheets were labeled as "800 Thread Count Sheet Set." 3-ER-265–266, ¶ 15. According to Panelli, he was "in particular interested" in thread count, conducted unspecified "extensive research," and would not have purchased the bedsheets "[b]ut for the 800 Thread Count, 100% cotton representation." 3-ER-265¶ 15; 3-ER-267 ¶ 17.

Despite not raising any qualitative dissatisfaction with the bedsheets, Panelli solicited "independent" thread count testing, which purportedly was conducted according to a 20-year-old version of the ASTM D3775 guidelines for counting threads. 3-ER-267, ¶ 18; 3-ER-302 n.1. This testing supposedly confirmed that the

sheets "had a thread count of 168 x 120, or a total thread count of 288." 3-ER-267, ¶ 18. The testing allegedly was conducted at a lab in January 2024 by "an expert who," very vaguely, "is knowledgeable in thread counting methodology." 3-ER-267, ¶ 18. Despite Target's repeated requests for Panelli to simply provide a testing report, as well as Panelli's promise to do so in conjunction with a further amended complaint following transfer of the case from the Northern District of California to the Southern District, Panelli refused to include a report of the purported testing with any version of his Complaint. *See* 2-ER-132–133, ¶¶ 4, 6; 2-ER-140. Indeed, Panelli reneged on his promise to provide the testing report and to file a further amended complaint actually describing the alleged testing, choosing instead to stand on his Amended Class Action Complaint ("FAC"). 2-ER-108; 2-ER-132–133, ¶¶ 4, 6.

This is significant because Panelli refused to include any specific *factual* information about the supposed testing in his FAC. *See* 3-ER-267, ¶ 18. Among other things, Panelli left shrouded in mystery who performed the testing, where it was performed, how it was performed (other than the purported "standard method" of a 20-year-old version of the ASTM D3775 guidelines, which have been revised multiple times in the intervening decades), or, importantly, how the thread count was actually measured, calculated, or ultimately determined. *See* 3-ER-267, ¶ 18.

Not sated by his vague attack on the single type of bedsheets that he allegedly purchased, Panelli purported to assert claims related to *all* 100% cotton bedsheets

6

sold by Target and advertised as having a thread count of 600 or more, including, for example, bedsheets made by different manufacturers, sold under different brands, possessing varying thread counts, and made of different types of cotton threads. *See* 3-ER-267–268 ¶ 19; 3-ER-270–271 ¶ 24. For these unpurchased sheets, Panelli alleged only "[o]n information and belief" that "it is *physically impossible* for cotton threads to be fine enough to allow for 600 or more threads in a single square inch of 100% cotton fabric." 3-ER-270–271, ¶ 24 (emphasis added). Apart from a handful of cherry-picked quotations and article references (which actually *undercut* this conclusion), no *factual* information supporting Panelli's belief appears in the FAC. *See generally* 3-ER-260–287.

Panelli purported to assert claims under California's Unfair Competition Law ("UCL") and Consumer Legal Remedies Act ("CLRA"). 3-ER-280–285, ¶¶ 55-80.

### B.      Procedural History

Panelli originally filed his Class Action Complaint against Target Corporation on April 4, 2024 in San Francisco County Superior Court. 3-ER-316–334. On May 8, 2024, Target removed the action to the Northern District of California. 3-ER-307–312. Following removal, Panelli filed his FAC, adding allegations about where he purchased the at-issue product, which revealed that he purchased his sheets in the Southern District of California and that his transaction had no apparent tie to the Northern District. *See generally* 3-ER-260–287. Based on those new allegations, and

to otherwise challenge the FAC, Target filed a Motion to Transfer Venue Pursuant to Section 1404(a), to Dismiss Pursuant to Rules 12(b)(6) and 9(b), and to Strike Pursuant to Rule 12(f). 3-ER-227–258. Panelli and Target eventually stipulated that the action be transferred to the Southern District of California. 2-ER-108. On July 15, 2024, the action was transferred. 1-ER-5.

With the transfer of the action from the Northern District to the Southern District, Panelli initially admitted that he would "need to amend the complaint" further and agreed that, in connection with the amendment, he would share his alleged testing results, which by then Target already had requested numerous times. 2-ER-133, ¶ 6; 2-ER-140. But Panelli changed course during a conference with Magistrate Judge Butcher in the Southern District, announcing his decision to *not* amend the FAC to address the issues raised in Target's motion to dismiss, and instead, stated he would stand on the FAC—despite its utter lack of factual support for his core theory of deception. 2-ER-108. Magistrate Judge Butcher then directed Target to renew its response to the FAC. 2-ER-108.

On August 16, 2024, Target filed its Motion to Dismiss Plaintiff's First Amended Complaint and to Strike. *See* 2-ER-99–130. Therein, Target raised, among other things, arguments regarding the application of *Moore v. Trader Joe's Co.*, 4 F.4th 874 (9th Cir. 2021) and Panelli's pleading insufficiencies. *See* 2-ER-99–130.

## C.      The District Court's Decision

On October 28, 2024, the District Court properly dismissed Panelli's action in its entirety (the "Order"). 1-ER-3–12. After analyzing this Court's "reasonable consumer" precedent, the District Court aptly noted that Panelli pleaded only two purported factual bases for his claims: (1) that "independent testing" revealed the purchased bedsheets had a lower-than-advertised thread count; and (2) that "it is physically impossible for cotton threads to be fine enough to allow for 600 or more threads in a single square inch of 100% cotton fabric." 1-ER-8.

Relying primarily on this Court's decision in *Moore v. Trader Joe's Co.*, 4 F.4th 874 (9th Cir. 2021), the District Court held:

> As in *Moore* and *Welk* [*v. Beam Suntory Imp. Co.*, 124 F. Supp. 3d 1039 (S.D. Cal. 2015)], [Panelli's] theory of consumer deception here is implausible and based on an unreasonable interpretation of the representations at issue. According to [Panelli's] own allegations in the FAC, [Panelli's] proposed interpretation of the phrase "800 thread count" (and any representation of a thread count higher than 600) in the context of 100% cotton bedsheets is physically impossible to achieve. As such, no reasonable consumer would interpret [Target's] advertising and labeling in the manner proposed by [Panelli]. No reasonable consumer would interpret [Target's] 100% cotton bedsheet advertising and labeling "as promising something that is impossible to find." As such, no reasonable consumer would be deceived by the labeling and advertising at issue in the manner proposed by [Panelli], and, thus, [Panelli's] UCL and CLRA claims fail as a matter of law.

1-ER-9–10 (citations omitted). In so holding, the District Court acknowledged decisions from other courts allowing other thread-count cases to proceed, but noted that none of those complaints included an allegation that the at-issue thread count

9

representations were "physically impossible" to achieve. 1-ER-10. The District Court further noted that those courts either were not bound by this Court's decision in *Moore* or otherwise neglected to analyze it. 1-ER-10.

After concluding that "[Target's] representations regarding the thread count of its bed sheets are not misleading to a reasonable consumer in the manner proposed by [Panelli] as a matter of law," the District Court turned to whether Panelli should be allowed leave to amend his UCL or CLRA claims. 1-ER-11. Because its dismissal was based on Panelli's physical impossibility allegation, and "it is impossible for [Panelli] to state a viable UCL or CLRA claim without contradicting that allegation," the District Court concluded that leave to amend would be futile and dismissed Panelli's claims with prejudice. 1-ER-11–12.

## SUMMARY OF THE ARGUMENT

Panelli attempts to portray himself as the consummate victim of Target's allegedly overstated thread counts and of the District Court's supposed misapplication of *Moore v. Trader Joe's Co.*, 4 F.4th 874 (9th Cir. 2021). But review of Panelli's allegations and the salient procedural history reveals that Panelli is a victim of nothing more than his own decisions.

*First*, Panelli's decision to ignore the application of *Moore* to his pleadings creates an insurmountable hurdle from the outset: waiver. Target raised and briefed *Moore*'s application in the District Court; Panelli ignored the argument and failed to

10

cite *Moore* even once in his opposition. In choosing not to brief the issue, Panelli conceded it and waived any challenge to the application of *Moore*. Because he conceded the argument in the District Court, he cannot complain about its application now.

*Second*, even if not waived, Panelli's arguments on the merits are unavailing. Panelli and the State of California misstate Target's argument and the practical implications of the District Court's Order. To pave the way for their parade of horribles should the District Court's Order stand, they attempt to conflate literal falsity with factual impossibility. But the District Court did not find that a literally false representation cannot be challenged. Instead, the District Court held that "no reasonable consumer would be deceived by the labeling and advertising at issue in the manner proposed by [Panelli]" *in light of Panelli's own allegations* that "it is physically impossible for cotton threads to be fine enough to allow for 600 or more threads in a single square inch of 100% cotton fabric." 1-ER-8–10. In other words, accepting *Panelli's own allegations* as true, his interpretation of the label—assuming that something factually impossible is true—is unreasonable, implausible, and cannot give rise to a claim of deception. *Moore*, 4 F.4th at 883-84.

*Third*, regardless of the impact of *Moore*, the District Court's decision should still be affirmed because Panelli's allegations are otherwise insufficiently pleaded, lacking a sufficient factual basis for his claims of testing or impossibility. Panelli

11

purports to support his claims of falsity with only cursory allegations of "independent testing" and "physical impossibility." Neither suffices, as Panelli failed to provide the requisite *factual information* supporting the allegations. Moreover, Panelli's own cited sources and anecdotal support in favor of his "physical impossibility" allegation in the form of select quotes from select articles (some of which were published by competitors in the bedsheet industry) in fact undermine his conclusions.

*Finally*, the District Court was within its discretion in denying Panelli leave to amend, as any amendment would be futile and Panelli had ample opportunity to cure these deficiencies. Panelli previously amended his complaint, was afforded additional opportunities to amend, and agreed amendment was "need[ed] . . . to add allegations including addressing the issues raised in the motion to dismiss[.]" 2-ER-140. Panelli nevertheless chose not to amend, leaving the issues raised by Target unaddressed. Because Target would be prejudiced by forgiveness of Panelli's decision to roll the dice on the FAC despite having full knowledge of Target's arguments, and because leave to amend would be futile, the District Court's decision should be affirmed.

## STANDARD OF REVIEW

The Court reviews *de novo* a district court's dismissal of a complaint under Federal Rule of Civil Procedure 12(b)(6). *Ebner v. Fresh, Inc.*, 838 F.3d 958, 962

12

(9th Cir. 2016) (affirming dismissal with prejudice of UCL and CLRA claims). It may "'"affirm the district court's dismissal on any ground supported by the record."'" *Id.* (quoting *ASARCO, LLC v. Union Pac. R.R.*, 765 F.3d 999, 1004 (9th Cir. 2014)); *Salameh v. Tarsadia Hotel*, 726 F.3d 1124, 1129 (9th Cir. 2013) ("If support exists in the record, a dismissal for failure to state a claim may be affirmed on any proper ground, even if the district court did not reach the issue or relied on different grounds or reasoning." (quoting *Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1295 (9th Cir. 1998)) (cleaned up)). Denial of leave to amend is reviewed for abuse of discretion. *D'Augusta v. Am. Petroleum Inst.*, 117 F.4th 1094, 1100 (9th Cir. 2024) (affirming denial of leave to amend as futile).

To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Although "a court must take all allegations of material fact as true and construe them in the light most favorable to the nonmoving party," it may disregard conclusory allegations or legal characterizations cast in the form of factual allegations. *Turner v. City & Cnty. of San Francisco*, 788 F.3d 1206, 1210 (9th Cir. 2015) (affirming dismissal with prejudice under Rule 12(b)(6)); *Warren v. Fox Family Worldwide, Inc.*, 328 F.3d

13

1136, 1139 (9th Cir. 2003) (affirming dismissal without leave to amend). Moreover, it is improper "to assume that the [plaintiff] can prove facts that it has not alleged or that the defendants have violated the . . . laws in ways that have not been alleged." *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).

## ARGUMENT

### I. Panelli Waived His Right to Challenge the District Court's Basis for Dismissal by Ignoring and Refusing to Respond to Target's Motion to Dismiss Argument Supporting It.

Panelli knowingly and affirmatively chose to ignore Target's argument regarding *Moore*'s application to his pleadings in the District Court, despite being repeatedly and explicitly put on notice; thus, he cannot complain now about the District Court's application of *Moore* on appeal. In its motion to dismiss, Target expressly raised *Moore* and argued that if one took Panelli's allegation that it is "physically impossible" to make 100% cotton sheets with a thread count of 600 or more at face value, a reasonable consumer could not be deceived in the manner alleged by Panelli by a thread count labeling of 600 or more. 2-ER-113–114. Quoting *Moore*, Target explained that a reasonable consumer "could not be misled *in the manner claimed by Plaintiff*, as a reasonable consumer would not understand Target's label 'as promising something that [according to Plaintiff] is impossible to find.'" 2-ER-114 (quoting *Moore*, 4 F.4th at 883-84).

14

Despite Target's clear invocation of recent precedent from this Court, Panelli refused to address this argument, even in passing, let alone substantively. *See generally* 2-ER-26–60. In fact, Panelli's Opposition did not cite or otherwise reference *Moore* even once. *See* 2-ER-26–60. Panelli made this choice despite being aware of Target's argument vis-à-vis *Moore* for an extended period, as Target initially raised it in its Motion to Transfer Venue Pursuant to Section 1404(a), to Dismiss Pursuant to Rules 12(b)(6) and 9(b), and to Strike Pursuant to Rule 12(f), filed in the Northern District on June 24, 2024. 2-ER-246–247. This was not an oversight; it was a calculated litigation choice. In declining to address this argument in the District Court, Panelli conceded it there. *See, e.g.*, *Caravan Canopy Int'l v. Home Depot U.S.A., Inc.*, No. 19-cv-1072, 2021 WL 831028, at *3 (C.D. Cal. Feb. 25, 2021) ("Plaintiff does not address this argument, and arguments to which no response is supplied are deemed conceded."); *Jones v. Regents of Univ. of Cal.*, No. 21-cv-7844, 2022 WL 1137089, at *2 (N.D. Cal. Apr. 18, 2022) (collecting cases); *Shorter v. Los Angeles Unified Sch. Dist.*, No. 13-cv-3198, 2013 WL 6331204, at *5 (C.D. Cal. Dec. 4, 2013) (collecting cases).

Having conceded the argument at the District Court, Panelli in turn waived the right to raise it on appeal. *See, e.g.*, *Beets v. Cnty. of Los Angeles*, 669 F.3d 1038, 1043 (9th Cir. 2012) (holding that plaintiffs' failure to mention an argument in opposition to a motion to dismiss "precludes them from advancing this contention

on appeal"); *B&G Foods N. Am., Inc. v. Embry*, 29 F.4th 527, 538 (9th Cir. 2022) (holding that plaintiff forfeited an argument in opposition to dismissal "because it failed to raise such argument below"); *AMA Multimedia, LLC v. Wanat*, 970 F.3d 1201, 1214-15 (9th Cir. 2020), *overruled on other grounds by Briskin v. Shopify, Inc.*, 135 F.4th 739 (9th Cir. 2025) (declining to consider an argument not raised in the district court).

Indeed, this Court applies "a general rule against entertaining arguments on appeal that were not presented or developed before the district court." *Visendi v. Bank of Am., N.A.*, 733 F.3d 863, 869 (9th Cir. 2013) (cleaned up). "Absent exceptional circumstances, [this Court] generally will not consider arguments raised for the first time on appeal, although [it has] discretion to do so." *AMA Multimedia, LLC*, 970 F.3d at 1213-14 (quoting *In re Am. W. Airlines*, 217 F.3d 1161, 1165 (9th Cir. 2000)).

No exceptional circumstances exist here. Application of *Moore* does not present a novel question of law, Panelli obviously was not blindsided by the argument in reply or otherwise, and there was no intervening change of law at any relevant point. *See id.* at 1213-14. Instead, Panelli simply elected to ignore the argument—to *Target's* detriment. This was not mere inadvertence. Target briefed the argument in its first and renewed motion to dismiss, again in its reply in support, and now in this appeal. Having selected the arguments he wished to contest and those

16

he wished to ignore, Panelli cannot suddenly backpedal and complain because the District Court ruled against him on an issue he affirmatively chose to disregard—and raise effectively new arguments for the first time on appeal.

Because Panelli failed to present his arguments regarding the application of *Moore* to the District Court, he cannot raise them now to undercut the District Court's holding in this case. *See Visendi*, 733 F.3d at 869-70 (declining to consider a non-jurisdictional argument raised by plaintiff for the first time on appeal). Permitting Panelli to raise new arguments would also prejudice Target, which has already expended significant resources addressing the arguments Panelli did choose to make.

## II. Accepting Panelli's "Physical Impossibility" Allegation as True, the District Court Properly Held That Panelli's Interpretation of the "800 Thread Count" Representation Was Unreasonable.

As the Supreme Court instructed in *Iqbal*, determining whether a complaint states a plausible claim for relief is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. Likewise, this Court and California precedent require judges to consider the context of any alleged deception in product labeling and employ common sense to determine whether it is plausible that reasonable consumers, acting reasonably under the circumstances, would be misled by the label or representation in question in the manner in which the plaintiff alleges. *See, e.g.*, *Becerra v. Dr Pepper/Seven*

17

*Up, Inc.*, 945 F.3d 1225, 1228-29 (9th Cir. 2019); *Ebner*, 838 F.3d at 963, 965;

*Brader v. Bayer Corp.*, 26 Cal. App. 5th 1156, 1165-66 (2018) (collecting cases).

Within those guidelines, the District Court properly dismissed Panelli's claims under

California's UCL and CLRA, concluding that a reasonable consumer could not be

misled "*in the manner proposed by* [*Panelli*] as a matter of law." 1-ER-11 (emphasis

added).

> **A.  Under *Moore*, and in Light of His Own Allegations, Panelli Did Not and Could Not Establish That the Reasonable Consumer Would Be Misled in the Manner Alleged.**

To prevail on deceptive or misleading marketing claims, a plaintiff must

demonstrate that a "reasonable consumer" is "likely to be misled by the

representation." *Moore*, 4 F.4th at 881-82. Here, Panelli's own allegation that it is

"physically impossible" to achieve the advertised thread count using his preferred

methodology leads to the only logical conclusion that no "reasonable consumer"

would interpret the label as promising that impossible result.

Following *Moore*, the "reasonable consumer" has been described as someone:

> [W]ho is intelligent, someone capable of analyzing different pieces of information, engaging in logical reasoning, and drawing "contextual inferences" from a product and its packaging. *Moore*, 4 F. 4th at 882. She is diligent, for she does not just view one phrase or image in isolation, but looks at the entirety of the packaging together—she "take[s] into account all the information available" to her and the "context in which that information is provided and used." *Id.* (citation omitted). And she appears to exhibit some skepticism about the representations made to her by a product's advertising, aware that corporations attempting to sell items are conveying information to a

given end and in a certain light. She does not expect advertisers to lie to her, nor should any consumer be expected to endure affirmative misrepresentations or strongly misleading claims. But she understands nuance and context, and that when making her purchasing decisions, all representations made by a seller are designed to *sell*.

*La Barbera v. Olé Mexican Foods Inc.*, No. 20-cv-2324, 2023 WL 4162348, at *10-11 (C.D. Cal. May 18, 2023) ("The bottom line is this: under *Moore*, 4 F.4th 874, the reasonable consumer does not approach purchasing decisions with a professorial genius or inclination toward exhaustive research, but she is also not a chump, too doltish or careless to engage in [a] simple analysis.").

Plausibly alleging that this "reasonable consumer" is "likely to be misled by the representation" is no "negligible burden," even at the motion to dismiss stage. *Moore*, 4 F.4th at 881-82; *Robles v. GOJO Indus., Inc.*, No. 22-55627, 2023 WL 4946601, at *1 (9th Cir. Aug. 3, 2023) (same). To do so, a plaintiff must plausibly allege "more than a mere possibility that the seller's label might conceivably be misunderstood by some few consumers viewing it in an unreasonable manner." *Moore*, F.4th at 882 (cleaned up). Instead, the reasonable consumer standard requires "a probability that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled." *Id.* (quoting *Ebner*, 838 F.3d at 965). Importantly, a plaintiff's unreasonable assumptions about a product's labeling cannot suffice to support a claim. *Becerra*, 945 F.3d at 1229-30.

19

Moreover, "deceptive advertising claims should take into account all the information available to consumers and the context in which that information is provided and used." *Moore*, 4 F.4th at 882 (quoting *Bell v. Publix Super Markets, Inc.*, 982 F.3d 468, 477 (7th Cir. 2020)). Critically, this can include off-label information. For example, in *Moore*, this Court acknowledged that a reasonable honey consumer would understand the "foraging nature of bees." *Moore*, 4 F.4th at 883. And in *Ebner*, the Court acknowledged that a reasonable consumer "understands that additional product may remain in the [lip product] dispenser tube after the screw mechanism prevents further advancement of the lip bullet" and that "some additional weight at the bottom of the tube—not consisting of product—may be required to keep the tube upright." 838 F.3d at 967.

While different consumers may care about different attributes of their bedsheets (*e.g.*, price, type of fabric, brand, whether they are Oeko-Tex certified, etc.), *if* they care about a given characteristic such as thread count, *Moore* underscores that a reasonable consumer would not only know more about that specific aspect of the product, but would spend time investigating it, just as Panelli alleges that he did. *Moore*, 4 F.4th at 884; *La Barbera*, 2023 WL 4162348, at *10. Consequently, this Court and others are willing to attribute significant off-label information to a reasonable consumer on the market for a particular product, especially when the consumer purports to care about a certain aspect of the product.

20

*See, e.g.*, *Moore*, 4 F.4th at 878 n.3, 884-85 (attributing some knowledge of, *inter alia*, the meaning of the UMF rating of 10+ on a jar of Manuka honey (even in the absence of the UMF logo) to a reasonable consumer of Manuka honey); *Welk*, 124 F. Supp. 3d at 1044 (holding that a "reasonable consumer wouldn't interpret the word 'handcrafted' on a bourbon bottle to mean that the product is literally 'created by a hand process rather than by a machine'" when "[m]achines, including stills and other equipment, have *always* been necessary to make bourbon"); *La Barbera*, 2023 WL 4162348, at *10, 16 ("Reasonable tortilla consumers need not be experts in Mexican American history or cuisine to know that fajitas are not primarily of *Mexican* origin, but rather are a 'Tex-Mex,' or Texan-Mexican American or Tejano phenomenon.").

Against this well-developed framework, the deficiencies in Panelli's theory are apparent. Panelli's assumptions about the label are rendered unreasonable by the very allegations in the FAC, which *inter alia* clearly indicate that multiple thread-counting methodologies exist.

For example, in the FAC, Panelli alleges that the ASTM D3775 is the "globally accepted measurement test for thread count." *See* 3-ER-262–264, ¶¶ 8, 11. But Panelli purportedly relied on the 20-year-old version of the standard. 3-ER-264, ¶ 11; 3-ER-302, n.1 ("Current edition approved Sept. 10, 2003. Published November 2003."). Other methods of thread counting include the more recent versions of the

21

ASTM D3775—discussion of which was conspicuously omitted from Panelli's allegations.[1] Moreover, as alleged in the FAC, multiple consumer-facing public sources highlight the existence of varying thread-counting methodologies, including "interesting math" and "creative counting." 3-ER-272–273, ¶¶ 30, 33. In making these allegations, Panelli not only highlighted that he failed to allege facts concerning his "expert's" purported application of a thread-counting methodology, but also admitted there is no single, definitive, or mandatory standard for conducting thread counts.

Accepting—as pleaded by Panelli—that multiple methods of thread counting exist, it necessarily follows that there also are multiple ways to interpret the "800 Thread Count" representation. *See Moore*, 4 F.4th at 882. It then becomes clear that Panelli's assumption that a 20-year-old thread-counting methodology was used, and that it was applied in a certain way, is wholly *unreasonable* if it is, in fact, *impossible* to reach even a 600-thread count using that methodology in whatever manner his "expert" purportedly applied it.[2]

---

[1] The ASTM D3775 has been updated at least five times since 2003, including most recently in 2023. 2-ER-133, ¶ 7; 2-ER-142 n.1.

[2] In that regard, the supposed application of this 20-year-old thread-counting methodology is a mystery on this record because Panelli's FAC did not provide any details regarding who performed the testing, when it was performed, how it was conducted, etc.—or simply attach the test report to his FAC. *See* 3-ER-267, ¶ 18.

22

Even Panelli acknowledges, "where the alleged interpretation of the challenged advertising is obvious nonsense," dismissal on the pleadings is appropriate. Dkt. 16.1 at 19, 24. While Panelli was specifically referencing cases involving the nutritional value of sweetened breakfast cereals based on their names (Cap'n Crunch 'Crunch Berries' and Froot Loops), the concept is no less applicable to Panelli's case as he framed it. *See* Dkt. 16.1 at 24. Given Panelli's "extensive research" prior to making his purchase (3-ER-265, ¶ 15), the public-facing sources he cited in support of his claims (3-ER-271–273, ¶¶ 29-33), and his *own allegation* that it is "physically impossible for cotton threads to be fine enough to allow for 600 or more threads in a single square inch of 100% cotton fabric" (3-ER-270, ¶ 24), Panelli's interpretation of the "800 Thread Count" label as understanding the thread count was conducted using a 20-year-old version of the ASTM D3775 in whatever manner his "expert" applied it is unreasonable, assuming the truth of his allegation that it is impossible to achieve such a count using that methodology. That is, it is simply implausible that Panelli—or any reasonable consumer—would assume the correct interpretation of the label is the one that is impossible.[3]

---

[3] The State of California cites multiple cases in support of the principle that literally false advertising is likely to deceive. Dkt. 18.1 at 14-16. Target takes no issue with the proposition itself, just with its (in)applicability here. In the cited cases, the plaintiffs alleged literal falsity, not factual impossibility. For example, in *Reid v.*

Panelli's claims cannot otherwise be saved by the existence of unrelated thread count cases that have survived the pleading stage in other district courts. While Panelli seeks to bolster his theory of deception by pointing to *Lancaster v. American Textile Co.*, 719 F. Supp. 3d 204 (N.D.N.Y. 2024); *Bruno v. American Textile Co.*, No. 22-cv-2937, 2023 WL 6976826 (N.D. Ill. Oct. 23, 2023); *Hawes v. Macy's Inc.*, 346 F. Supp. 3d 1086 (S.D. Ohio 2018); and *Thomas v. Walmart Inc.*, 720 F. Supp. 3d 650 (N.D. Ill. 2024), his reliance is misplaced. Dkt. 16.1 at 29 n.1; 1-ER-10–11. As the District Court aptly noted, "[n]one of the complaints at issue in these decisions appear to have contained an allegation that the thread count representations at issue were physically impossible to achieve." 1-ER-10. Moreover, these opinions were issued by district courts not bound by this Court's decision in *Moore*.

In sum, while the label of the product at issue stated that the sheets were "800 Thread Count," other available information would quickly dissuade a reasonable consumer of bedsheets from believing that the thread count was calculated using a means where achieving such a thread count is, according to Panelli, "impossible."

---

*Johnson & Johnson*, the claim was that "a product prominently labeled as containing 'No Trans Fat' in fact contained trans fats," not that it is *impossible* for the product to contain no trans fats. Dkt. 18.1 at 15. Likewise, in *Davidson v. Kimberly-Clark Corp.*, the allegation was that use of the word "flushable" was false because the product did not break down as a truly flushable product would, not that it is impossible for a genuinely flushable product to exist. *See* Dkt. 18.1 at 15.

24

Accordingly, "[Panelli's] alleged assumption is not just 'unreasonable' or 'fanciful.' It is implausible." *See Moore*, 4 F.4th at 883-84 ("A reasonable consumer would not understand [the] label here as promising something that is impossible to find."); *Davis v. HSBC Bank Nevada, N.A.*, 691 F.3d 1152, 1162 (9th Cir. 2012) (affirming dismissal of false advertising claim where plaintiff's theory "defie[d] common sense"). The District Court properly dismissed Panelli's UCL and CLRA claims as inadequately stated.

## B. Dismissal of False or Misleading Advertising Claims at the Pleading Stage Is Proper Under These Circumstances.

In recent years, this Court repeatedly has affirmed dismissal on the pleadings in cases involving false or misleading advertising claims; for example, in *Moore*, *Ebner*, *Becerra*, and *McGinity v. Procter & Gamble*, 69 F.4th 1093 (9th Cir. 2023).[4]

Where, as here, "a court can conclude as a matter of law that members of the public are not likely to be deceived by the product packaging [in the manner alleged by Plaintiff], dismissal is appropriate." *Werbel v. Pepsico, Inc.*, No. 09-cv-4456, 2010 WL 2673860, at *3 (N.D. Cal. July 2, 2010). By interpreting the label as

---

[4] Additional district court decisions dismissing such claims on the pleadings in recent years include, for example, *La Barbera* (tortillas); *Walcoff v. Innofoods USA, Inc.*, No. 22-cv-1485, 2023 WL 3262940 (S.D. Cal. May 4, 2023) (keto and "keto-friendly" products); *Steinberg v. Icelandic Provisions, Inc.*, No. 21-cv-5568, 2022 WL 220641 (N.D. Cal. Jan. 25, 2022) (Icelandic cultured dairy product); and *Cheslow v. Ghirardelli Chocolate Co.*, 472 F. Supp. 3d 686 (N.D. Cal. July 17, 2020) (premium white baking chips).

25

promising something that, by his own allegations, is physically impossible to achieve, Panelli rendered his claims implausible as a matter of law. *See, e.g.*, *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988-89 (9th Cir. 2001) ("We have held that a plaintiff can . . . plead himself out of a claim by including unnecessary details contrary to his claims."); *Weisbuch v. Cnty. of Los Angeles*, 119 F.3d 778, 783 n.1 (9th Cir. 1997) ("Whether the case can be dismissed on the pleadings depends on what the pleadings say. A plaintiff may plead herself out of court.") (cleaned up).

## III. Panelli Failed to State a Claim for Misrepresentation for Additional Reasons as Well.

Even putting aside issues of waiver and the District Court's proper application of *Moore*, dismissal should be affirmed for the independent reason that Panelli's allegations are devoid of the requisite factual substance and particularity. Panelli challenges the "800 Thread Count" bedsheets that he purchased along with *all* 100% cotton sheets sold at Target advertised as having a 600+ thread count. He does so based exclusively on two allegations: (1) a vague allegation that he tested a single set of bedsheets advertised as being "800 Thread Count" (3-ER-267, ¶ 18) and (2) an allegation asserted "on information and belief" that it is physically impossible for 100% cotton bedsheets to have a thread count of 600 or higher (3-ER-270–271, ¶ 24). Neither suffices.

Where, as here, a CLRA or a UCL claim is "grounded in fraud," the claim must be pleaded with particularity under Rule 9(b). *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125, 1127-28 (9th Cir. 2009). To meet this standard, a plaintiff must identify "the who, what, when, where, and how" of the alleged conduct. *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (internal quotations omitted). This requirement: (1) ensures that a defendant is provided with sufficient "notice of the particular misconduct that is alleged to constitute the fraud" so as to allow it to "defend against the charge and not just deny that [it has] done anything wrong"; and (2) "prohibit[s] a plaintiff from unilaterally imposing upon the court, the parties and society enormous social and economic costs absent some factual basis." *Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir. 1985) (cleaned up). "Any averments which do not meet [Rule 9(b)] should be 'disregarded,' or 'stripped' from the claim[.]" *Kearns*, 567 F.3d at 1124 (quoting *Vess*, 317 F.3d at 1105).

Here, Panelli has alleged no *factual* support for his testing or impossibility allegations—the core of his UCL and CLRA claims. Unlike the State of California, the Court cannot assume that Panelli can prove facts that he has not alleged. *Associated Gen. Contractors of Cal.*, 459 U.S. at 526. Accordingly, these allegations should be stripped from the FAC, and dismissal should be affirmed. *Vess*, 317 F.3d at 1107 ("If insufficiently pled averments of fraud are disregarded, as they must be, in a complaint or claim grounded in fraud, there is effectively nothing left of the

27

[claim]. In that event, a motion to dismiss under Rule 12(b)(6) would obviously be granted.").

## A. Panelli's Physical Impossibility Allegation Cannot Support His Claims.

Paragraph 18 of the FAC is one of only two allegations supporting Panelli's claim that the "800 Thread Count" representation on the bedsheets he purchased is false. Critically, it is the *sole* allegation upon which Panelli bases his claim of falsity as to *all* unpurchased, untested, and unspecified bedsheet sets sold by Target and advertised as having a thread count of 600 or more. *See generally* 3-ER-260–287. But this allegation is devoid of any factual support whatsoever.

As an initial matter, paragraph 18 is pleaded solely "on information and belief." But, absent a statement explaining the factual basis for the "belief," the *Twombly* plausibility standard does not allow for such unsupported and conclusory allegations generally—let alone to support a claim that is subject to Rule 9(b) pleading standards. *See Neubronner v. Milken*, 6 F.3d 666, 672 (9th Cir. 1993) ("[A] plaintiff who makes allegations on information and belief must state the factual basis for the belief."); *Sims v. Opportunity Fin.*, No. 20-cv-4730, 2021 WL 1391565, at *8 (N.D. Cal. Apr. 13, 2021) (finding that an allegation based on "information and belief" was "conclusory in nature" and determining that it must be disregarded "[o]n that basis alone" under *Iqbal* and *Twombly*).

28

While allegations "on information and belief" may be taken as true for purposes of a motion to dismiss "where the facts are peculiarly within the possession and control of the defendant or where the belief is based on *factual information* that makes the inference of culpability probable," *Soo Park v. Thompson*, 851 F.3d 910, 928 (9th Cir. 2017) (emphasis added) (internal quotation marks omitted), neither is the case here. Target clearly does not have exclusive possession and control of the facts needed to support the allegation of "physical impossibility" (which is not exclusive to bedsheets sold by Target). Further, Panelli has failed to provide any *factual information* to support his belief that achieving a 600+ thread count for 100% cotton bedsheets is "physically impossible." *See* 3-ER-270–271, ¶ 24.

Moreover, the very articles and quotations Panelli invokes do not support his position. In fact, the anecdotal allegations that Panelli highlighted as supporting his "belief" actually undercut it, providing an additional reason for the Court to disregard the allegation. *See Sims*, 2021 WL 1391565, at *8 (concluding allegation on "information and belief" should be disregarded because the complaint, when read as a whole, did not support it). First, the statement that "you just can't get [1,000] threads on a loom" says *nothing* about whether 600, 800, or even 999 threads can fit on a loom. *See* 3-ER-271–272, ¶ 29. Concluding that 20%-40% fewer threads likewise cannot fit on a loom would require considerable speculation. Second, a competitor's statement that, "[d]epending on the type of cotton" used, thread counts

29

of over 400 are "generally" not possible equally fails to provide the support Panelli requires, and instead implies just the opposite—*i.e.*, with certain types of cotton, a thread count *can* be greater than 400. 3-ER-272, ¶ 30. Third, another competitor's equivocal statement that bedsheets "with thread counts well over 1,000" appear on store shelves, but are "likely due to manipulative marketing," likewise undercuts Panelli's conclusion, as it again refers to sheets with thread counts *over* 1,000— saying nothing about sheet sets with an 800 thread count, let alone a 600 thread count—and notes that those claims are "likely," but not "definitely," "certainly," or "always" due to manipulative marketing. 3-ER-272, ¶ 32. Finally, whether other manufacturers have misrepresented the thread counts of sheets made with unspecified fabrics establishes nothing with respect to any sheets sold by Target. *See* 3-ER-272–73, ¶¶ 31-33.

In sum, Panelli's cursory "on information and belief" allegation—which he relies on to support his claim as to the bedsheets he purchased, as well as his vague and unspecified claim as to the many varieties of sheet sets sold by Target—falls far short of meeting the Rule 9(b) standard. It also is undercut by the very (non-factual)

30

allegations that he calls upon to support it. Accordingly, Panelli's "physical impossibility" allegation must be disregarded. *Kearns*, 567 F.3d at 1124.[5]

### B. Panelli's "Independent Testing" Allegation Is Inapposite to Other Bedsheets Sold by Target.

Panelli purports to challenge *all* sheets sold by Target with thread counts of 600 or higher. By his own allegations, this includes, for example, sheets with thread counts as high as 1,200, manufactured by different companies, made of different varieties of cotton, and with advertising emphasizing varied qualities. 2-ER-267–270, ¶¶ 19-23. In claiming that these bedsheets and the "many other[s]" sold by Target are "substantially similar," Panelli ignored, *inter alia*, the differences

---

[5] While Panelli did not quote it, one portion of his cited articles notes "[t]he sweet spot for cotton sheets woven of an extra-long staple cotton like pima or Egyptian cotton, which produces a finer thread, is generally 400 to 600, with some luxury options edging up a bit higher." Thread Count FAQ: Myths & Facts, PIMACOTT (June 14, 2018), https://www.pimacott.com/blog/thread-count-faq-myths-facts; *see* 3-ER-272, ¶ 32 n.9. While implicitly acknowledging that the type of cotton thread matters, this article also states that "some luxury options" have thread counts *higher* than 600. That the "support" Panelli cites in the FAC, in actuality, undercuts his position further underscores the implausibility of his "impossibility" theory. *See Somers v. Apple, Inc.*, 729 F.3d 953, 964 (9th Cir. 2013) (determining plaintiff's theory implausible due to contradictory facts in his complaint); *Warren*, 328 F.3d at 1139 (noting that courts "are not required to accept as true conclusory allegations which are contradicted by documents referred to in the complaint") (internal quotations omitted).

31

between various bedding products—weaving methods, types of cotton, etc.[6] Given these differences, Panelli's allegations concerning the purported "[i]ndependent testing of the bedsheets" he purchased is clearly insufficient to support a claim as to all 600+ thread count sheets because "where the actual composition or appearance of the product is legally significant to the claim at issue, the consumer may only be allowed to pursue claims for products with identical product composition and/or appearance." *Ang v. Bimbo Bakeries USA, Inc.*, No. 13-cv-01196, 2014 WL 1024182, at *8-9 (N.D. Cal. Mar. 13, 2014) (dismissing claims based on unpurchased products where "fact-specific analyses of each product will be required; namely determination of each product's ingredients and formation"); *Jackson v. Gen. Mills, Inc.*, No. 18-cv-2634, 2019 WL 4599845, at *4 (S.D. Cal. Sept. 23, 2019) (denying plaintiff's attempts to proceed on unpurchased types of cereal because the key issue in that case (slack-fill) "obviously will vary depending on the type, shape, and texture of the cereal, and possibly other factors as well"); *Lopez v. Zarbee's,*

---

[6] To the extent Panelli seeks to support his vague allegation of "substantial similarity" through reference to *Thomas* or *Witt v. Kohl's*, such efforts are unavailing. In *Thomas*, the plaintiff challenged sheets from the same product line that were simply available in different colors and sizes. 720 F. Supp. 3d at 658. Moreover, the Northern District of Illinois expressly took a more lenient approach to "substantial similarity" than courts in the Ninth Circuit. *Id.* In *Witt*, the plaintiffs included specific allegations of "substantial similarity" not present here, including that the defendant "uses a consistent program of third-party testing for all of its sheet products." First Am. Compl., *Witt v. Kohl's*, 2:24-cv-1967 (C.D. Cal. May 20, 2024), ECF 19, ¶ 27.

*Inc.*, No. 22-cv-4465, 2023 WL 210878, at *7 (N.D. Cal. Jan. 17, 2023) (dismissing claims for "non-purchased, non-tested" melatonin products because it "is not a reasonable inference that the gummies, tablets, and liquid products at issue all come from the same, systematic manufacturing practice") (internal quotations omitted); *McKinney v. Corsair Gaming, Inc.*, No. 22-cv-312, 2022 WL 2820097, at *13 (N.D. Cal. July 19, 2022) (finding vague and conclusory allegations of substantial similarity insufficient and striking class claims to the extent they refer to unpurchased products).

In short, Panelli cannot rely on the "independent testing" allegation relative to a single set of "800 Thread Count" sheets to sustain his claims as to *all* bedsheets marketed as 600+ thread count. *See Effinger v. Ancient Organics LLC*, 657 F. Supp. 3d 1290, 1300 (N.D. Cal. 2023) (holding that plaintiffs' "claims may proceed only on the basis that the label on the 32-ounce size of the product is at issue," despite the challenged product being "sold in multiple sizes with similar labeling").

### C. Panelli's Vague Allegation of "Independent Testing" Is Factually Insufficient to Support His Claim That the Bedsheets He Purchased Are Not "800 Thread Count" as Labeled.

Even as to the bedsheets that Panelli purchased and purportedly tested, his lone "independent testing" allegation lacks factual support sufficient to state a claim. Despite repeated requests from Target at various stages to simply attach a testing report to his complaint or otherwise provide it, Panelli refused. Panelli also refused

33

to describe the "expert" who purportedly conducted the testing, alleging only that it was an "expert who is knowledgeable in thread counting methodology." 3-ER-267, ¶ 18. It should go without saying that "knowledgeable in thread counting methodology" (which at this point could encompass counsel for the parties) does not equate to "qualified to conduct thread counting." Panelli further declined to identify any lab at which the testing supposedly took place, the specific date, the exact methodology employed by the "expert," or provide anything more than a perfunctory statement of the results. 3-ER-267, ¶ 18.

In that regard, per the FAC, the purportedly knowledgeable "expert" apparently used a version of the ASTM D3775 that was published over 20 years ago (and which has been updated multiple times since). 3-ER-267, ¶ 18; 3-ER-302 n.1; 2-ER-133, ¶ 7; 2-ER-142 n.1. Yet Panelli fails to explain why more current standards were not used by the purportedly knowledgeable "expert." Further, the "Method C: traversing thread counter" allegedly used by Panelli's expert does not even come from the ASTM D3775 standard that he claims to have followed, but instead, is a method from an entirely different ISO 7211 standard (which itself is under review and expected to be replaced). 3-ER-267, ¶ 18; 2-ER-133–134, ¶ 8; 2-ER-147–149. These inconsistencies within Panelli's own FAC about his testing methods render his testing allegations implausible as a whole. *See Jackson v. Kaiser Permanente*, No. 18-cv-8176, 2019 WL 10893916, at *5 (C.D. Cal. Jan. 8, 2019) (granting motion

34

to dismiss and explaining "Plaintiff cannot plead contradictory facts that render [her] claims implausible").

In addition to these inconsistencies, Panelli also failed to allege any specific, particularized *facts* describing how the testing was *actually performed* on the bedsheets at issue. Paragraph 18 of the FAC provided nothing more than a simplistic statement that the testing revealed a thread count of "168 x 120, or a total thread count of 288," but did not identify even the most basic *facts* underlying such conclusion. *See* 3-ER-267, ¶ 18. Without more, the FAC left Target and the Court to guess as to how the allegedly independent lab actually calculated the thread count and precluded Target from being able to defend the charges of falsity in advertising (which are based *exclusively* on this purported unattached and undescribed testing).

Courts within this Circuit and beyond repeatedly have dismissed claims based on supposed "independent laboratory testing" that was not sufficiently alleged to have been conducted in accordance with the required testing methods. *See, e.g.*, *Forouzesh v. CVS Pharm.*, No. 18-cv-4090, 2019 WL 652887, at *5 (C.D. Cal. Feb. 15, 2019) (dismissing claims that relied on a testing methodology other than what was required by federal regulation); *Dougherty v. Source Nats., Inc.*, 148 F. Supp. 3d 831, 836 (E.D. Mo. 2015) (dismissing false labeling complaint where the plaintiff failed to allege that the required testing methods were applied or that the product did not pass when properly conducted). They have also dismissed complaints with

35

otherwise vague testing allegations like those here. *See, e.g.*, *Greer v. Strange Honey Farm, LLC*, 114 F.4th 605, 615 (6th Cir. 2024) (affirming dismissal where the "complaint gives no explanation of what this alleged 'testing' entailed" and noting that the complaint did "not explain how these samples were tested, who conducted the testing, how many samples were tested, when or where the samples were purchased, whether any (or how many) samples had HMF values below 40, or other details that would adequately show why" the labels were false); *Myers v. Wakefern Food Corp.*, No. 20-cv-8470, 2022 WL 603000, at *4 (S.D.N.Y. Mar. 1, 2022) (finding plaintiff failed to sufficiently allege misrepresentation where "the Product was allegedly subjected to a laboratory test, but she fails to provide any details whatsoever about [what] this laboratory test entailed. She does not, for instance, describe the testing methodology followed, the specific date, time, or place of the testing, who conducted the testing, the qualifications of the testers, etc."); *Daly v. Wonderful Co.*, No. 24-cv-1267, 2025 WL 1331750, at *4 (N.D. Ill. May 7, 2025) (dismissing complaint with prejudice after an opportunity to amend where plaintiff "provides no information about when the testing was done, how it was done, or what it showed").

To the extent Panelli tries to salvage his insufficient pleading by latching onto other thread count cases with "similar" testing allegations that survived the pleading stage, his efforts are unavailing. *See* 2-ER-43–45 (citing *Lancaster*, 719 F. Supp. 3d

36

204; *Bruno*, 2023 WL 6976826; *Hawes*, 346 F. Supp. 3d 1086; and *Thomas*, 720 F. Supp. 3d 650). Each of those cases involved more detailed testing allegations than the FAC—generally attaching a copy of the test report itself. For example, the lab testing report was attached to the complaint in *Bruno*. *See* Ex. A to Compl., *Bruno v. Am. Textile Co.*, No. 1:22-cv-2937 (N.D. Ill. June 6, 2022), ECF 1-1. Similarly, in *Lancaster*, the complaint included an image of the material portions of the test reports that identified the warp count, filling count, and laboratory, as well as the manner in which the plaintiffs alleged that the defendant had falsely calculated the thread count. *See* Compl., *Lancaster v. Am. Textile Co.*, No. 1:22-cv-1280 (N.D.N.Y. Dec. 1, 2022), ECF 1, ¶¶ 25-28. In *Thomas*, "the complaint contain[ed] extensive allegations describing the methodology by which thread counts for the . . . sheets were derived." 720 F. Supp. 3d at 664. This is quite contrary to the FAC, which merely identified the aged "guidelines" purportedly used by a "knowledgeable" expert while omitting any *facts* about how the thread count was actually measured or calculated. 3-ER-267, ¶ 18.[7] Panelli's failure to include those *facts* in the FAC is critical, including because Panelli—unlike the plaintiffs in these other thread count cases—challenges *100% cotton* sheets, which are materially different from sheets

---

[7] While the *Hawes* complaint did not attach or detail any testing, the defendant did not raise the issue in its motion to dismiss, and the district court did not analyze the issue in its resulting opinion. *See generally* 346 F. Supp. 3d 1086.

37

made of synthetic materials that have typically been challenged in these other thread count cases. 3-ER-270–271, ¶ 24; *Thomas*, 720 F. Supp. 3d at 655 ("cotton and polyester blended fabric bed sheets"); Compl., *Lancaster*, No. 1:22-cv-1280, ECF 1, ¶ 1 (depicting label of sheet set made from a polyester, cotton, and modal blend); Compl., *Bruno*, No. 1:22-cv-2937, ECF 1, ¶ 1 (same).

As Panelli failed to plead sufficient *facts* to support his testing and physical impossibility allegations, they were insufficient to support a claim as to even the "800 Thread Count" bedsheets that he purchased, let alone the numerous varieties of 600+ thread count sheets that he neither purchased nor tested.

## IV. Dismissal With Prejudice Was Warranted.

The District Court acted within its "particularly broad" discretion in denying further leave to amend. *Do v. Tri City Healthcare Dist.*, No. 19-cv-2253, 2020 WL 7318119, at *6 (S.D. Cal. Dec. 11, 2020) (quoting *Ascon Props., Inc. v. Mobil Oil Co.*, 866 F.2d 1149, 1160, (9th Cir. 1989)). In determining whether leave to amend was properly denied, this Court considers five factors: "bad faith, undue delay, prejudice to the opposing party, futility of amendment, and whether the plaintiff has previously amended the complaint." *United States v. Corinthian Colls.*, 655 F.3d 984, 995 (9th Cir. 2011). When the proposed amendment would be futile, that alone warrants denial of leave to amend. *Reddy v. Litton Indus. Inc.*, 912 F.2d 291, 296-97 (9th Cir. 1990).

38

### A.   Leave to Amend Was Properly Denied as Futile.

As articulated by the District Court, leave to amend should be granted only if the deficiencies in a complaint "can be cured with additional allegations that are 'consistent with the challenged pleading' and that do not contradict the allegations in the original complaint." *Corinthian Colls.*, 655 F.3d at 995 (quoting *Reddy*, 912 F.2d at 296-97). Here, the District Court dismissed Panelli's UCL and CLRA claims based on his allegation that it is physically impossible for 100% cotton fabric to have a thread count of 600 or more, making it unreasonable for a consumer to be misled in the manner alleged by Panelli. 1-ER-9–11.

In arguing that the District Court abused its discretion in denying him leave to amend, Panelli ignores the factors referenced above, instead focusing exclusively on how he could potentially further amend the FAC. In so doing, Panelli is quick to downplay the importance of his "impossibility" allegations to his claims and even offers to simply omit this pivotal allegation from a further amended pleading. Dkt. 16.1 at 37-38 (arguing his "claims do not rise and fall on his allegations of impossibility"). But this belated offer ignores that the impossibility allegation was *central* to Panelli's claims and formed the *sole basis* for his broad challenge to *all* 100% cotton sheets sold by Target—whether 600, 800, 1,200, or some other thread

39

count. Removing that allegation would leave a significant portion of Panelli's claims wholly unsupported.[8]

More fundamentally, deletion of the impossibility allegation would blatantly contradict the allegations and positions Panelli already staked out in the FAC. Because Panelli could not amend his FAC without gutting his claims or contradicting the allegations contained therein, further leave to amend was properly denied. *See Reddy*, 912 F.2d at 296-97.

## B. In Any Event, Evaluation of the Remaining Factors Confirms That Leave to Amend Was Properly Denied.

Even if it were possible for Panelli to further amend the FAC without contradicting his prior allegations—it is not—the District Court's denial of leave to amend should still be affirmed. In determining the propriety of leave to amend, courts are to "examine each case on its facts." *Fresno Unified Sch. Dist. v. K.U. ex rel. A.D.U.*, 980 F. Supp. 2d 1160, 1175 (E.D. Cal. 2013) (internal quotation marks omitted). In other words, the case's procedural history is of particular import. *Id.*

---

[8] For the first time in his Opening Brief, Panelli also extended an alternative offer to supplement the FAC with additional allegations about "the sophistication of consumers in the market for Target's bedsheets, or an explanation of what consumers do and do not know about thread count and textile manufacturing." Dkt. 16.1 at 38. To the extent Panelli could even craft such allegations with sufficient *factual support*, the attributes and knowledge of the reasonable consumer are within the Court's bailiwick to discern. Moreover, the remaining factors in the analysis of whether leave to amend should be allowed weigh in favor of affirming the District Court's decision. *See* Section IV.B, *infra*.

Here, Panelli's undue delay and previous opportunities to amend, as well as the prejudice to Target, all support the District Court's exercise of discretion in denying leave to amend. *See Tri City Healthcare*, 2020 WL 7318119, at *7 (denying leave to amend where "the majority of the factors . . . weigh against allowing the proposed amendment").

A prime example of "undue delay" is when the party seeking leave "knew or should have known [the] facts and theories raised in the proposed amendment at the time it filed its original pleadings." *Fresno Unified*, 980 F. Supp. 2d at 1176. A finding of undue delay is especially warranted when the facts sought to be added should have been adduced as part of a plaintiff's factual investigation "before [the] filing [of] Plaintiff's original Complaint." *Tri City Healthcare*, 2020 WL 7318119, at *5-6 (finding undue delay where the facts the plaintiff sought leave to add "were readily available to Plaintiff months before filing of the original Complaint").

Here, Panelli pleaded that he had the testing results that Target repeatedly requested be detailed in an amended complaint *months* before he filed his original complaint. 3-ER-316–334 (showing filing of initial complaint on April 4, 2024); 3-ER-267, ¶ 18 (alleging testing was performed in January 2024). Yet, Panelli repeatedly, and intentionally, refused to provide the alleged testing report or include sufficient factual detail about it in his pleadings.

41

Panelli was unquestionably on notice of Target's arguments regarding both the application of *Moore* and the other pleading insufficiencies for months prior to affirmatively deciding to stand on his FAC. Panelli amended his original complaint in May 2024 following removal of the action. 3-ER-260–287. Target then filed its original dispositive motion in June 2024, highlighting these issues, among others. 2-ER-227–258. Panelli initially agreed to provide the testing report and admitted a "need" to further amend the FAC in response to Target's motion. 2-ER-140. But—with full knowledge of Target's challenges to the FAC—he later made a calculated decision and chose to stand on the FAC refusing to provide the promised testing report or any meaningful factual detail. 2-ER-135–140; 2-ER-106. This is not a case of inadvertent omission or excusable neglect; it is a deliberate litigation strategy that wasted judicial resources and imposed unnecessary costs on Target.

Because Panelli previously amended his complaint and declined subsequent opportunities to amend, further leave to amend should be denied. *See Tri City Healthcare*, 2020 WL 7318119, at \*6 (finding that plaintiff's prior opportunities to amend and plaintiff's failure to allege the facts and theories it knew or should have known at the time of prior amendments weighed against granting leave to add such facts and theories); *Ward v. Crow Vote LLC*, No. 21-cv-1110, 2022 WL 17882162, at \*4 (C.D. Cal. Oct. 11, 2022), *aff'd*, No. 22-56108, 2024 WL 2239010 (9th Cir. May 17, 2024) (denying plaintiff's request for leave to amend because "Plaintiffs

42

were aware of Defendants' challenge" that it was now seeking to address and "knew or should have known the facts and theories raised by the proposed amendments at the time of the original pleading" and, at least, after defendants made their challenge).

Target has already been prejudiced by Panelli's litigation tactics, continues to suffer prejudice (including by having to address arguments not raised by Panelli below), and would suffer further prejudice as a result of another amended complaint. "Prejudice results when an amendment would unnecessarily increase costs," and "litigation costs" can "become prejudicial when the additional costs could easily have been avoided had the proposed amendments been included within the original pleading." *Fresno Unified*, 980 F. Supp. 2d at 1177. Because Panelli chose to stand on *this version* of his FAC, on which Target fully briefed and prevailed on a motion to dismiss, including based on deficiencies known to Panelli for quite some time and that he refused to address, the District Court was well within its discretion in denying leave to amend.

## CONCLUSION

Panelli's troubles are of his own making. By choosing to ignore Target's argument regarding *Moore*'s application at the district-court level, he waived his right to contest it on appeal. In any event, the District Court properly applied *Moore* in holding that Panelli's theory of deception is implausible as a matter of law under

43

the reasonable consumer standard—*based on his own allegations* of "impossibility." Even putting that aside, the FAC suffered from fundamental pleading deficiencies to state a claim under the UCL or CLRA. Panelli had ample notice and opportunity to cure these defects and, despite admitting a "need" to further amend, he chose to stand on the deficient FAC. Further amendment would be futile and would only serve to prejudice Target. Accordingly, the District Court's Order dismissing Panelli's claims and denying leave to amend was not only proper but compelled by the record and the law. The District Court's Order should be affirmed in its entirety.

Dated: June 5, 2025

DENTONS US LLP

By: */s/ Michael J. Duvall*
    Michael J. Duvall
    Attorneys for Defendant-Appellee
    TARGET CORPORATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

## Form 8. Certificate of Compliance for Briefs

*Instructions for this form: http://www.ca9.uscourts.gov/forms/form08instructions.pdf*

**9th Cir. Case Number(s)** 24-6640

I am the attorney or self-represented party.

**This brief contains** 10,637 **words,** including 0 words

manually counted in any visual images, and excluding the items exempted by FRAP

32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

○ complies with the word limit of Cir. R. 32-1.

○ is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

○ is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

○ is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

◉ complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:

☐ it is a joint brief submitted by separately represented parties.
☑ a party or parties are filing a single brief in response to multiple briefs.
☐ a party or parties are filing a single brief in response to a longer joint brief.

○ complies with the length limit designated by court order dated _____.

○ is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** s/ Michael J. Duvall   **Date** June 5, 2025

*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at forms@ca9.uscourts.gov*

**Form 8**                                                                 *Rev. 12/01/22*