**Appeal No. 24-6640**

# IN THE UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

Alexander Panelli
*Plaintiff-Appellant,*

v.

Target Corporation
*Defendant-Appell*ee.

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF CALIFORNIA
NO. 3:24-cv-01218-H-DEB
HON. MARILYN HUFF

## APPELLANT ALEXANDER PANELLI'S REPLY BRIEF

Glenn A. Danas (270317)
Brent A. Robinson (289373)
Lauren Anderson (329173)
CLARKSON LAW FIRM, P.C.
22525 Pacific Coast Highway
Malibu, CA 90265
Tel.: (213) 788-4050

Lawrence J. Salisbury (179748)
SALISBURY LEGAL CORP.
656 5th Ave., Ste. R
San Diego, CA 92101
Tel. (619) 241-2760

Craig Straub (249032)
Zachary Crosner (272295)
CROSNER LEGAL, P.C.
9440 Santa Monica Blvd.,
Ste. 301
Beverly Hills, CA 90210
Tel. (866) 276-7637

*Attorneys for Plaintiff-Appellant Alexander Panelli*

**TABLE OF CONTENTS**

INTRODUCTION ............................................................................. 1

LEGAL ARGUMENT ..................................................................... 4

  I.  Panelli did not "waive" his ability to appeal any aspect of the district court's order. ............................................................. 4

      A.  Panelli directly opposed Target's argument regarding insufficient pleadings and the reasonable consumer standard in his opposition to Target's motion to dismiss. ...... 6

      B.  In the alternative, this Court should address *Moore*'s application because it's a pure legal issue and the district court's reading substantially undermines California consumer protection law. ..................................... 10

  II.  Target misapplies *Moore* to create a new, perverse rule. ........... 12

      A.  Allegations of factual impossibility are congruent with, not contrary to, allegations of literal falsity. ........................ 12

      B.  This Court should reject Target's attempt to construct a heightened reasonable consumer standard. ......................... 14

          1.  Dismissal of false advertising claims on the pleadings is rarely appropriate. ...................................... 16

          2.  Target wrongly suggests that if consumers care about a given product characteristic, they must research and investigate it. .............................. 19

          3.  Target improperly imputes knowledge of all facts alleged in the complaint to Panelli at the time of purchase. ................................................................ 22

          4.  Similar thread count cases are persuasive. ..................... 25

  III. Panelli's claims are otherwise viable. ......................................... 26

      A.  Panelli alleged the "who, what, where, when, and how" of Target's deception, satisfying Rule 9(b). ........................... 26

i

B. Panelli sufficiently alleged independent testing of the Products. ................................................................ 28

C. Panelli sufficiently alleged, upon information and belief, that certain advertised thread counts are impossible to achieve. ............................................................... 30

IV. At a minimum, Panelli should be permitted to amend. ............. 33

A. Amendment would not be futile. ........................................ 33

B. Other factors weigh in favor of granting leave to amend. .... 34

CONCLUSION ............................................................................... 37

CERTIFICATE OF COMPLIANCE ..................................................... 39

CERTIFICATE OF SERVICE ............................................................ 40

# TABLE OF AUTHORITIES

**Cases**

*AMA Multimedia, LLC v. Wanat*
970 F.3d 1201(9th Cir. 2020) ..................................................... 9

*Amin v. Subway Restaurants, Inc.*
No. 21-cv-00498-JST
2022 U.S. Dist. LEXIS 243270
(N.D. Cal. July 8, 2022) ............................................................ 29

*Ang v. Bimbo Bakeries USA, Inc.*
No. 13-cv-01196-WHO
2014 U.S. Dist. LEXIS 34443
(N.D. Cal. Mar. 13, 2014) ......................................................... 31

*B&G Foods N. Am., Inc. v. Embry*
29 F.4th 527 (9th Cir. 2022) .................................................. 8, 9

*Becerra v. Dr Pepper/Seven Up, Inc.*
945 F.3d 1225 (9th Cir. 2019) ................................................. 18

*Beets v. Cty. of L.A.*
669 F.3d 1038 (9th Cir. 2012) ............................................... 8, 9

*Bell v. Publix Super Mkts., Inc.*
982 F.3d 468 (7th Cir. 2020) ................................................... 15

*Broomfield v. Craft Brew All., Inc.*
No. 17-cv-01027-BLF
2018 U.S. Dist. LEXIS 177812
(N.D. Cal. Sep. 25, 2018) ......................................................... 21

*Bruno v. Am. Textile Co. Inc.*
No. 22-CV-2937
2023 U.S. Dist. LEXIS 189709
(N.D. Ill. Oct. 23, 2023) ...................................................... 7, 25

*Caravan Canopy Int'l, Inc. v. Home Depot U.S.A., Inc.*
No. SACV 19-1072 PSG (ADSx)
2021 U.S. Dist. LEXIS 45005
(C.D. Cal. Feb. 25, 2021) ....................................................................8

*Cheslow v. Ghirardelli Chocolate Co.*
472 F. Supp. 3d 686
(N.D. Cal. July 17, 2020)..................................................................17

*Davidson v. Kimberly Clark Corp.*
889 F.3d 956 (9th Cir. 2018) ..................................................13, 26, 27

*Do v. Tri City Healthcare Dist.*
No. 19cv2253-MSB(NLS)
2020 U.S. Dist. LEXIS 233977
(S.D. Cal. Dec. 11, 2020)..................................................................34

*Dream Palace v. Cty. of Maricopa*
384 F.3d 990 (9th Cir. 2004) ........................................................11, 12

*Dupree v. Younger*
598 U.S. 729 (2023) .........................................................................10

*Ebner v. Fresh, Inc.*
838 F.3d 958 (9th Cir. 2016) ............................................................18

*El Paso v. Am. W. Airlines, Inc.*
217 F.3d 1161(9th Cir. 2000) ...........................................................10

*Eminence Capital, LLC v. Aspeon, Inc.*
316 F.3d 1048 (9th Cir. 2003) ..........................................................35

*Fresno Unified Sch. Dist. v. K.U. ex rel. A.D.U.*
980 F. Supp. 2d 1160 (E.D. Cal. 2013) ........................................35, 36

*Gompper v. VISX, Inc.*
298 F.3d 893 (9th Cir. 2002) ............................................................33

*Howey v. United States*
481 F.2d 1187 (9th Cir. 1973) ..........................................................36

iv

*In re E.R. Fegert, Inc.*
  887 F.2d 955 (9th Cir. 1989) .................................................................5

*Jackson v. Gen. Mills, Inc.*
  No. 18cv2634-LAB (BGS)
  2019 U.S. Dist. LEXIS 162447
  (S.D. Cal. Sep. 20, 2019)......................................................................31

*Jones v. Regents of the Univ. of Cal.*
  No. 21-cv-07844-JSW
  2022 U.S. Dist. LEXIS 70745
  (N.D. Cal. Apr. 18, 2022)...................................................................6, 7

*Kearns v. Ford Motor Co.*
  567 F.3d 1120 (9th Cir. 2009) ............................................................28

*La Barbera v. Olé Mexican Foods Inc.*
  No. EDCV 20-2324 JGB (SPx)
  2023 U.S. Dist. LEXIS 110929
  (C.D. Cal. May 18, 2023) .......................................................14, 15, 21

*Lancaster v. Am. Textile Co., Inc.*
  No. 1:22-CV-01280-BKS-ML
  2024 U.S. District LEXIS 54406
  (N.D.N.Y. Feb. 27, 2024) ...............................................................7, 25

*Lopez v. Zarbee's, Inc.*
  No. 22-cv-04465-CRB
  2023 U.S. Dist. LEXIS 7868
  (N.D. Cal. Jan. 17, 2023)....................................................................31

*Maisel v. S.C. Johnson & Son, Inc.*
  No. 21-cv-00413-TSH
  2021 U.S. Dist. LEXIS 86203
  (N.D. Cal. May 5, 2021).....................................................................28

*McGinity v. P&G*
  69 F.4th 1093 (9th Cir. 2023..............................................................18

*McKinney v. Corsair Gaming, Inc.*
  No. 22-cv-00312-CRB
  2022 U.S. Dist. LEXIS 127906
  (N.D. Cal. July 19, 2022) ...................................................................... 31

*Moore v. Trader Joe's Co.*
  4 F.4th 874 (9th Cir. 2021) ........................................................... *passim*

*Neubronner v. Milken*
  6 F.3d 666 (9th Cir. 1993) ................................................................... 31

*Raich v. Gonzales*
  500 F.3d 850 (9th Cir. 2007) ............................................................... 10

*Reddy v. Litton Indus.*
  912 F.2d 291(9th Cir. 1990) ................................................................ 34

*Reid v. Johnson & Johnson*
  780 F.3d 952 (9th Cir. 2015) ............................................................... 13

*Salazar v. Target Corp.*
  83 Cal. App. 5th 571 (2022) .................................................... 15, 17, 18

*Salazar v. Walmart, Inc.*
  83 Cal. App. 5th 561(2022) .................................................... 15, 17, 18

*Shorter v. L.A. Unified Sch. Dist.*
  No. CV 13-3198 ABC (AJW)
  2013 U.S. Dist. LEXIS 172364
  (C.D. Cal. Dec. 4, 2013) ..................................................................... 6, 7

*Somers v. Apple, Inc.*
  729 F.3d 953 (9th Cir. 2013) ............................................................... 32

*Sprewell v. Golden State Warriors*
  266 F.3d 979 (9th Cir. 2001) ............................................................... 14

*Steinberg v. Icelandic Provisions, Inc.*
  No. 21-cv-5568
  2022 U.S. Dist. LEXIS 13487
  (N.D. Cal. Jan. 25, 2022) ..................................................................... 17

*Thomas v. Walmart Inc.*
720 F. Supp. 3d 650 (N.D. Ill. 2024) ....................................................25

*United States v. Corinthian Colls.*
655 F.3d 984 (9th Cir. 2011) ..............................................................33

*Vess v. Ciba-Geigy Corp. USA*
317 F.3d 1097(9th Cir. 2003) .............................................................29

*Visendi v. Bank of Am., N.A.*
733 F.3d 863 (9th Cir. 2013) ...........................................................8, 9

*Walcoff v. Innofoods USA, Inc.*
No. 22-cv-1485
2023 U.S. Dist. LEXIS 78474
(S.D. Cal. May 4, 2023) ......................................................................17

*Waln v. Dysart Sch. Dist.*
54 F.4th 1152 (9th Cir. 2022)..............................................................30

*Ward v. Crow Vote LLC*
No. 8:21-cv-01110-FWS-DFM
2022 U.S. Dist. LEXIS 195393
(C.D. Cal. Oct. 11, 2022)......................................................................35

*Warren v. Fox Family Worldwide, Inc.*
328 F.3d 1136 (9th Cir. 2003) .............................................................32

*Weisbuch v. Cnty. of Los Angeles*
119 F.3d 778 (9th Cir. 1997) ...............................................................14

*Welk v. Beam Suntory Imp. Co.*
124 F. Supp. 3d 1039 (S.D. Cal. 2015)................................................20

*Werbel v. Pepsico, Inc.*
No. 09-cv-4456
2022 U.S. Dist. LEXIS 13478
(N.D. Cal. July 2, 2010).......................................................................24

*Whiteside v. Kimberly Clark Corp.*
108 F.4th 771 (9th Cir. 2024)....................................................*passim*

**Statutes**

Fed. R. Civ. P. 26(a)(2)(D) ............................................................... 29

Fed. R. Civ. P. 9(b) ............................................................... *passim*

## INTRODUCTION

The crux of Target's defense turns on a misreading of *Moore v. Trader Joe's* that would impose a novel and subversive principle in California: false advertising claims are actionable ***unless they are so false that they are physically impossible to achieve***, in which case, advertisers receive immunity from civil liability. As explained in the State of California's amicus brief in support of reversal, this interpretation of *Moore* would undermine California's express prohibition on false advertising. Target's interpretation also collapses this Court's careful analytical framework, which discussed label ambiguity, contextual inferences, and the relevant product market, to inform a finding of implausibility in *Moore*.

Target argues that Panelli waived the ability to appeal the district court's order, and that this Court should employ a heightened reasonable consumer standard and dismiss allegations describing factual impossibility as a matter of law. Target also attacks the sufficiency of Panelli's pleadings under Rule 9(b), and advocates for denial of Panelli's opportunity to further amend. Target's counter-arguments fail.

1

First, Panelli did not waive his ability to appeal any aspect of the district court's order because Panelli's opposition met head-on Target's arguments in favor of dismissal due to insufficient pleadings, despite his omission of *Moore* in his argument. Alternatively, the Court should nonetheless address *Moore*'s application because it presents critically important pure legal issue given that the district court's reading substantially alters California consumer protection law.

Second, the Court should not endorse Target's attempt to construct a new reasonable consumer standard based on a misreading of *Moore*. Panelli's claims should survive because, under fundamental principles underlying California's consumer protection statutes, allegations of factual impossibility are *congruent* with, not contrary to, allegations of literal falsity. Furthermore, *Moore* does not alter this Court's repeated admonition that false advertising claims should rarely be dismissed on the pleadings.

Target's strained reading of *Moore* should be rejected because it places unreasonably burdensome expectations on the ordinary consumer. For example, Target's suggestion that if consumers care about a given product characteristic, they must research and investigate it, is wrong.

Not even in the context of a niche, specialty market, has this Court saddled consumers with the duty to research and investigate the science behind product label statements as a condition precedent to presenting a valid claim.

Target also attempts to elevate the reasonable consumer standard by improperly imputing knowledge of all facts alleged in the complaint to Panelli at the time of purchase, which is likewise unreasonable, given that Panelli alleges he was misled—not that he knew of the factual impossibility—at the time of purchase.

Third, moving past the reasonable consumer analysis, Panelli's Claims are otherwise viable. Panelli alleged the "who, what, where, when, and how" of Target's deception in its advertising and sale of products with false thread count claims, as confirmed by expert testing, in satisfaction of Rule 9(b). Target takes aim at Panelli's testing allegations, claiming that Panelli must provide painstaking detail regarding the methodology, location, and expert underlying the test. But Panelli's allegations are sufficient at the pleading stage: they explain the precise methodology, the qualifications of the expert, and Target's unfavorable result.

Additionally, Panelli sufficiently alleged, on information and belief, that thread counts of over 600 are impossible to achieve in a "100% cotton" bedsheet because cotton threads are too large to physically fit 600 or more of them into a single square inch of fabric. Panelli also explains that artificially inflated thread count claims, such as Target's, are increasingly common in the bedsheet industry.

Finally, if this Court agrees with Target's construction of *Moore*, then Panelli should be permitted to amend his claims accordingly. Critically, Panelli has not received an opportunity to address the district court's concerns via amendment.

## LEGAL ARGUMENT

### I. Panelli did not "waive" his ability to appeal any aspect of the district court's order.

The district court centered its order on its misreading of *Moore v. Trader Joe's Co.*, 4 F.4th 874 (9th Cir. 2021), ruling that no reasonable consumer would be deceived into believing that an advertisement promised something that, it turns out, is impossible to find. 1-ER-9. Because Panelli did not specifically cite *Moore* in his opposition to Target's motion to dismiss, Target argues that Panelli conceded any

4

opposition to the district court's characterization of *Moore*. Target is mistaken.

Panelli's opposition set forth robust argument rejecting Target's many attacks on Panelli's pleadings, unlike the cases cited by Target where litigants failed to substantively address entire arguments or motions. Ans. Br. at 15. Thus, Panelli did not "waive" any argument in opposition, even if he did not cite the *Moore* case.

Target also argues that issues not raised before the district court generally cannot be raised on appeal—but that rule is premised on the idea that for an appellate court to consider an argument, the argument must be raised sufficiently for a trial court to rule on it. *See In re E.R. Fegert, Inc.*, 887 F.2d 955, 957 (9th Cir. 1989). Here, the argument *was* raised sufficiently for the district court to rule on it, and the district court *did in fact* rule on it. Indeed, *Moore*'s applicability formed the entire basis for the district court's conclusion that Panelli's claims failed as a matter of law. Target's argument that *Moore* was not sufficiently raised below contradicts the plain language of the district court's order.

However, if the Court finds otherwise, the Court should nonetheless consider the applicability of *Moore* to Panelli's pleadings because it is a

5

pure legal issue arising from allegations presumed true and because Target has fully briefed its position on the issue. Additionally, the district court's order requires this Court's attention to the extent it undermines California's basic prohibition on false advertising.

## A. Panelli directly opposed Target's argument regarding insufficient pleadings and the reasonable consumer standard in his opposition to Target's motion to dismiss.

Target contends that because Panelli did not cite *Moore* in his opposition to Target's motion to dismiss, he conceded Target's interpretation of this Court's precedent. Ans. Br. at 14–15. In support of this assertion, Target directs the Court to two cases where pro se plaintiffs failed to substantively address defendants' arguments for dismissal. Ans. Br. at 15, citing *Jones v. Regents of the Univ. of Cal.*, 2022 U.S. Dist. LEXIS 70745 (N.D. Cal. Apr. 18, 2022) (pro se opposition failed to oppose defendants' arguments and largely copied and pasted allegations from her complaint); *Shorter v. L.A. Unified Sch. Dist.*, 2013 U.S. Dist. LEXIS 172364 (C.D. Cal. Dec. 4, 2013) (pro se opposition expressly adopted one of defendants' contentions and did not address defendants' six additional bases for dismissal).

6

However, unlike in *Jones* and *Shorter*, Panelli forcefully opposed Target's argument that Panelli failed to allege a sufficient factual basis to support his allegations. *See* 2-ER-41–46. Panelli explained the sufficiency of his testing and physical impossibility allegations, contended with Target's characterization of his facts, directed the court to persuasive case law, and distinguished much of Target's proffered authority. *Id.* Panelli also highlighted similar thread-count cases that survived pleadings challenges. 2-ER-41–44 (citing *Lancaster v. Am. Textile Co., Inc.*, 2024 U.S. Dist. LEXIS 54406, at \*7 (N.D.N.Y. Feb. 27, 2024) and *Bruno v. Am. Textile Co., Inc.*, 2023 U.S. Dist. LEXIS 189709, at \*1 (N.D. Ill. Oct. 23, 2023), both of which were reasonable consumer cases specifically dealing with sheet thread count claims).

The fact that *Moore* does not appear in Panelli's well-developed arguments opposing dismissal does not amount to a wholesale concession, as Target now contends. This is especially true where *Moore* was not the primary basis for Target's argument: Target discussed *Moore* in a mere two paragraphs buried at the end of Target's four-and-a-half-page argument section. 2-ER-43–44.

*Caravan Canopy Int'l, Inc. v. Home Depot U.S.A., Inc.*, 2021 U.S. Dist. LEXIS 45005, at *3, *8 (C.D. Cal. Feb. 25, 2021) is likewise inapposite. There, the court found that the plaintiff's failure to address one of three enumerated factors pertinent to the propriety of a stay dictated weighing of the omitted factor in favor of defendant. *Id.* Target points to no analogous failure of Panelli's to engage with an enumerated factor-based test—rather, Target's position is that Panelli's failure to anticipate the district court's idiosyncratic decision to latch onto the passing reference to *Moore* dooms Panelli's entire opposition. Clairvoyance of this nature is not required for Panelli to sufficiently defend his claims.

Next, Target argues that Panelli waived the right to address *Moore* on appeal, directing the Court to a slew of decisions where litigants advanced new factual or legal arguments for the first time on appeal. Ans. Br. at 15–16, citing *Beets v. Cty. of L.A.*, 669 F.3d 1038, 1043 (9th Cir. 2012) (asserting new and contradictory version of underlying facts for first time on appeal); *B&G Foods N. Am., Inc. v. Embry*, 29 F.4th 527, 538 (9th Cir. 2022) (introducing new argument that a sham exception applied); *Visendi v. Bank of Am., N.A.*, 733 F.3d 863, 869 (9th Cir. 2013)

8

(same); *AMA Multimedia, LLC v. Wanat*, 970 F.3d 1201, 1214–15 (9th Cir. 2020) (same).

In *Beets*, *B&G Foods*, *Visendi*, and *AMA Multimedia*, the appellants sought review of issues that the district court had not—and critically, *could* not have—considered. Circumstances such as these inform the "general rule" against entertaining arguments on appeal that were neither presented nor developed before the district court, and thus where the district court did not decide them in the first instance. Ans. Br. p. 15-16. In Panelli's case, the application of *Moore* underlies the entirety of the district court's order. 1-ER-3–12.

In all, Target's waiver argument fails because Panelli opposed Target's pleadings challenge with well-developed factual and legal arguments, including that Panelli's allegations satisfied the reasonable consumer standard, the same general issue decided in *Moore*. Additionally, Panelli's appeal contends with the central aspect of the district court's decision, not a new factual or legal issue which the district court could not have addressed.

9

**B. In the alternative, this Court should address *Moore*'s application because it's a pure legal issue and the district court's reading substantially undermines California consumer protection law.**

Even if this Court were to find that Panelli waived his argument vis-à-vis *Moore*, this Court should exercise its discretion to address *Moore*'s application to the allegations of falsity and physical impossibility in Panelli's case. *See El Paso v. Am. W. Airlines, Inc.*, 217 F.3d 1161, 1165 (9th Cir. 2000) (the court has discretion to consider arguments raised for the first time on appeal).

Courts may consider a new issue on appeal if the issue presented is a pure question of law and the opposing party will suffer no prejudice notwithstanding that the issue was not raised below. *Raich v. Gonzales*, 500 F.3d 850, 868 (9th Cir. 2007). Purely legal issues are those that can be resolved without reference to any disputed facts. *Dupree v. Younger*, 598 U.S. 729, 735 (2023).

Whether the district court properly interpreted and applied *Moore* to the facts as alleged by Panelli is a pure question of law because there are no disputed facts for this Court to evaluate in the context of a pleadings challenge. On a motion to dismiss, all allegations of material fact in the complaint are taken as true. *Whiteside v. Kimberly Clark*

10

*Corp.*, 108 F.4th 771, 777 (9th Cir. 2024). Panelli seeks this Court's correction of the district court's misreading of *Moore*, which will clarify the actionability of literally false, factually impossible label claims under California consumer protection law.

Additionally, Target will suffer no prejudice by this Court taking up the issue because it has fully briefed this Court on its characterization of the law. *See Dream Palace v. Cty. of Maricopa*, 384 F.3d 990, 1005 (9th Cir. 2004) ("[Appellee] will not be prejudiced by [appellant's] failure to advance the arguments below; it has had, and has taken advantage of, a full opportunity to brief its response to the new arguments.").

Finally, this Court should exercise its discretion to review the district court's application of *Moore* because the district court's holding and reasoning materially alters California consumer protection law in contravention of binding precedent. *See* Dkt. 18.1 at 18 [AG Brief] (emphasizing that the district court ascribed to *Moore* a non-existent rule that impossible advertising claims cannot mislead consumers, which "directly contradicts California's ban on false advertising" and "would have the perverse effect of incentivizing product sellers to make increasingly brazen false advertising claims."). If left to stand, the district

11

court's decision invites courts in this Circuit to further erode California's consumer protection law—over the express objection of the state of California. *See id.* at 18 ("This is not, and cannot be, the law in California."). Given the high stakes of leaving the district court's analysis unchecked, the "particular circumstances of the case" overcome the standard presumption against hearing new arguments on appeal. *See Dream Palace*, 384 F.3d. at 1005.

## II. Target misapplies *Moore* to create a new, perverse rule.

Target discards this Court's careful analytical framework established in *Moore* and ignores recent Ninth Circuit and California precedent to erect a new, heightened pleading standard for false advertising claims. This Court should reject Target's arguments.

### A. Allegations of factual impossibility are congruent with, not contrary to, allegations of literal falsity.

Target claims that it takes "no issue" with the proposition that literally false advertising is likely to deceive and posits that the proposition is simply inapplicable to claims of physical impossibility. Ans. Br. at 23. Nonetheless, Target's attempt to distance literal falsity from physical impossibility is a distinction without a difference. Target's fallacious argument ignores the critical fact that an advertisement can

12

be both physically impossible to achieve and deeply deceptive to the consuming public.

Target aims to counter the state of California's rejection of its argument by emphasizing that the cases cited by the Attorney General did not involve allegations of impossibility. Ans. Br. at 23–24. But Target cannot explain how the absence of impossibility allegations renders these decisions inapposite, where this Court found literal falsity actionable. *See Reid v. Johnson & Johnson*, 780 F.3d 952, 967 (9th Cir. 2015) (reversing dismissal on the pleadings where it was "clear" that the prominent label statement that the product contained "No Trans Fat" was "not true"); *Davidson v. Kimberly Clark Corp.*, 889 F.3d 956, 965 (9th Cir. 2018) (reversing dismissal on the pleadings where plaintiff had adequately alleged that the "flushable" label claim was false because the product at issue did not disperse in plumbing as a truly "flushable" product would have). This is because the allegations are congruent: an advertising claim can be *both* highly deceptive and literally false.[1] Accordingly, Panelli's

---

[1] In arguing for a contrary finding, Target absurdly suggests that the consuming public is omniscient. However, this Court has emphasized that consumers are not product experts, nor does the law require them to be. *See Whiteside,* 108 F.4th at 783 ("most people likely have not

13

impossibility allegation does not "plead himself out of a claim," as Target argues. Ans. Br. at 26, citing *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988–89 (9th Cir. 2001) (finding plaintiff pled himself out of a claim by including unnecessary details contrary to his claim) and *Weisbuch v. Cnty. of Los Angeles*, 119 F.3d 778, 783 n.1 (9th Cir. 1997) ("Whether the case can be dismissed on the pleadings depends on what the pleadings say.").

This Court should not entertain Target's attempt to subvert the fundamental principles of California's false advertising laws and should instead affirm that literal falsity is likely to deceive, regardless of whether the label claim is also factually impossible to achieve.

### B. This Court should reject Target's attempt to construct a heightened reasonable consumer standard.

Target piggybacks the rushed analysis in *La Barbera v. Olé Mexican Foods Inc.*, 2023 U.S. Dist. LEXIS 110929, at *10–11 (C.D. Cal. May 18, 2023), where the district court ignored *Moore*'s analytical framework and cherry-picked this Court's findings to construct its own

---

contemplated how baby wipes are made. Similarly, most consumers likely have not considered whether synthetic ingredients are necessary to make wipes 'shelf-stable,' a term that is not part of common language.").

14

elevated version of the ordinary consumer. Following dicta in *La Barbera,* Target ascribes intelligence, sophistication, analytical rigor, and skepticism to the reasonable consumer, emphasizing that consumers understand "nuance and context" in advertising that is "designed to *sell.*" Ans. Br. at 18–19 (emphasis in original).

But *Moore* did not elevate the reasonable consumer standard— rather, this Court explained that where a product label is ambiguous, consumers may look to contextual information available to them, which can dispel unreasonable interpretations of a label claim, especially for a niche, specialty product. *Moore*, 4 F.4th at 883–84.

Contrary to Target and *La Barbera*'s construction, since *Moore*, California state and federal courts have repeatedly endorsed a more realistic version of the "reasonable consumer" that contemplates the typical experience at a grocery store. *See, e.g., Salazar v. Walmart, Inc.*, 83 Cal.App.5th 561, 566 (2022) (citation modified) (reasonable consumers "need not be exceptionally acute and sophisticated, nor must they necessarily be wary or suspicious of advertising claims"); *Salazar v. Target Corp.*, 83 Cal.App.5th 571, 578 (2022) (same); *see also id.* at 580 (noting that "many grocery shoppers make quick decisions that do not

15

involve careful consideration of all information available to them")
(citation omitted).

In *Whiteside*, this Court explained the nuance of the *Moore* decision:
only in the context of a "niche, specialty product" might buyers be "more
likely to exhibit a higher standard of care" than the ordinary consumer,
which this Court has described as, for example, "a parent walking down
the dairy aisle in a grocery store, possibly with a child or two in tow, who
is not likely to study with great diligence the contents of a complicated
product package." 108 F.4th at 779.

Target's attempt to ascribe a sophisticated, analytical purchase
process to every consumer, in every transaction, should be rejected
because it undermines decisions of this Court and California law and
ignores the reality of the consumer experience.

### 1. Dismissal of false advertising claims on the pleadings is rarely appropriate.

Since *Moore*, this Court has reaffirmed that whether a business
practice is deceptive will usually be a question of fact not appropriate for
decision at the pleadings stage. *Whiteside*, 108 F.4th at 778
(characterizing dismissal of UCL, FAL, and CLRA claims at the
pleadings stage as "rare"). In fact, dismissal is only appropriate when the

advertisement itself makes it impossible for the plaintiff to prove that a reasonable consumer is likely to be deceived. *Id.*

Likewise, since *Moore*, California courts have affirmed the same deferential pleading burden. *See Salazar v. Target*, 83 Cal.App.5th at 579 (citation modified) ("the unsuitability of a demurrer to test the accuracy of a complaint is particularly marked in false advertising cases"); *Salazar v. Walmart*, 83 Cal.App.5th at 566–67 (same).

Target cobbles together a list of cases where this Court has affirmed the dismissal of certain false advertising claims, but the fact that this Court has dismissed some claims does not undermine the Court's own characterization of appropriate circumstances warranting dismissal. *See* Ans. Br. at 25.[2] Moreover, none of the underlying facts are analogous to Panelli's claims.

---

[2] Even Target's cherry-picked cases recite the same standard. *See Walcoff v. Innofoods USA, Inc.*, 2023 U.S. Dist. LEXIS 78474 (S.D. Cal. May 4, 2023) (acknowledging that whether a business practice is deceptive will usually be a question of fact inappropriate for decision at the pleadings); *Steinberg v. Icelandic Provisions, Inc.*, 2022 U.S. Dist. LEXIS 13487 (N.D. Cal. Jan. 25, 2022) (only in "rare situations" will allegations of consumer deception fail as a matter of law).

Target also cites *Cheslow v. Ghirardelli Chocolate Co.*, 472 F.Supp.3d 686 (N.D. Cal. July 17, 2020), but California appellate courts have found

In *Ebner* and *Becerra,* this Court declined to entertain allegations of deception that were based on assumptions that defied common sense. *Ebner v. Fresh, Inc.*, 838 F.3d 958, 965–66 (9th Cir. 2016) (affirming dismissal because consumers can see that twist-up lip products contain extra product at the base to anchor the product that cannot readily be used); *Becerra v. Dr Pepper/Seven Up, Inc.*, 945 F.3d 1225, 1229–30 (9th Cir. 2019) (consumers know that "diet," on a soft drink label, is a relative claim about calorie content, not a weight loss promise). In *McGinity*, this Court found that where a front-label claim is ambiguous, the ambiguity can be resolved by reference to the back label. *McGinity v. P&G*, 69 F.4th 1093, 1099 (9th Cir. 2023). Here, the deceptive nature of Target's label claims is affirmed—not contradicted—by common sense. AOB at 27–28. And Target's "800 thread count" "100% cotton" label claims are unambiguous and are neither explained nor corrected by other label statements. *Id.* at 22–24.

---

nearly identical claims actionable. *See Salazar v. Target*, 83 Cal.App.5th at 578; *Salazar v. Walmart*, 83 Cal.App.5th at 566 (same).

18

Target's reference to cases with entirely different factual and legal bases for dismissal cannot overcome this Court's instruction that dismissal of false advertising claims on the pleadings is rarely appropriate. *Whiteside*, 108 F.4th at 778.

### 2. Target wrongly suggests that if consumers care about a given product characteristic, they must research and investigate it.

Target's next attempt to rewrite the law asserts that consumers are charged with knowledge of "significant off-label information" regarding any material product information. Ans. Br. at p. 20–21. Additionally, Target avers that if consumers care about a given product characteristic, they will "spend time investigating it," to dispel unreasonable interpretations of a product advertisement. Ans. Br. 20–21.[3] California consumer protection law supports neither of Target's novel propositions.

In *Moore*, this Court recognized that consumers in the market for an expensive, specialty product have some general awareness of the

---

[3] Target tries to leverage Panelli's "research," but Panelli's allegations do not suggest that he became an expert in thread counting; rather, he merely compared brick-and-mortar stores with online retailers, determined that pricing as it related to thread count was a material factor in his choice, and purchased Target bedsheets because he understood that they were priced comparatively higher because of their higher thread count. 1-ER-265.

19

product's attributes—what it is, and why it is expensive. *See Moore* 4 F. 4th at 884. In other words, a consumer's interest in a niche good indicates some level of underlying knowledge about the good and/or its market. (Otherwise, there would be no draw.) Thus, *Moore* astutely tracks the unique purchasing dynamics at play in one particular market—but nowhere ascribes a sweeping duty to all consumers to "spend time investigating" any product attribute they care about. *See* Ans. Br. at 20. Nor does *Moore* attribute "significant off-label information" to reasonable consumers; rather, this Court simply recognized that certain niche, expensive product markets necessarily draw consumers with specialized knowledge. Put differently, what's "reasonable" to expect of consumers of expensive, specialty honey is not reasonable across the board. Target's repeated attempts to read new rules into this Court's *Moore* analysis should be rejected.

The other cases cited by Target stand for the unremarkable proposition that common sense informs consumers' interpretations of a label claim. *See* Ans. Br. at 20–21, citing *Welk v. Beam Suntory Imp. Co.,* 124 F.Supp.3d 1039, 1040 (S.D. Cal. 2015) (consumers generally know that machines have always been necessary to create bourbon)*; La*

20

*Barbera*, 2023 U.S. Dist. LEXIS 110929 (consumers are generally familiar with "Tex-Mex" cuisine and understand that not all Mexican-inspired food is created in Mexico). Neither of these cases ascribes "significant off label information" to consumers, as Target argues.

In addition to their legal deficiencies, Target's new proposed rules are problematic for consumer-plaintiffs because they would fundamentally undermine allegations of materiality. To pursue class claims, anchored by their own purchase experience, plaintiffs generally may allege that challenged representations are material. *See, e.g., Broomfield v. Craft Brew All., Inc.*, 2018 U.S. Dist. LEXIS 177812, at \*30 (N.D. Cal. Sep. 25, 2018) ("Each [California false advertising] statute allows Plaintiffs to establish the required elements of reliance, causation, and damages by proving that Defendants made what a reasonable person would consider a material misrepresentation."). Under Target's new rule, if a product representation is material to consumers, they will automatically be assumed to have researched and investigated it to ferret out whether a company's advertisement is true or false. This is not the law, as it would inappropriately shift the burden away from advertisers (to tell the truth) and onto ordinary consumers (to discover deception).

21

**3. Target improperly imputes knowledge of all facts alleged in the complaint to Panelli at the time of purchase.**

Target characterizes Panelli's claims as "obvious nonsense," pointing to Panelli's pre-purchase research, the public-facing sources he cited in support of his claims, and his allegation of physical impossibility. Ans. Br. at 23. But Target incorrectly assumes that Panelli was privy to every fact alleged *at the time of purchase*—that he knew about deceptive thread count practices, and that he knew that the Product's thread count claim was impossible and still decided to purchase the Product—none of which is true. *See* 3-ER-267 ("Plaintiff Panelli would not have purchased the Product, or would have paid less for the Product, had he known that the products have a lower than advertised thread count.").

Again, Target's characterization of the law would decimate consumer protection claims. To file a lawsuit, a consumer must be informed that an advertising claim is false or misleading; given that a consumer knows that the advertising is false or misleading, the lawsuit is implausible. Target's premise ignores the central aspect of the allegations—Panelli, like all other plaintiffs in false advertising cases, was misled ***at the time of purchase***, despite having learned of the

22

deception afterward. *Id.* Allegations articulating the nature of deception are not a sword for defendants like Target to brandish against consumers' claims.

Target's other attempts to undermine Panelli's allegations also fail. Target claims that Panelli's FAC alleges that multiple thread-counting methodologies exist, concocting an "admission" that "there is no single, definitive, or mandatory standard for conducting thread counts." Ans. Br. at 21–22. On the contrary, Panelli alleges that there is one "globally accepted measurement test for thread count," the ASTM D 3775 (3-ER-262), which is the "industry standard" method (3-ER-264), and while there are several ASTM D 3775-complaint means to count the individual threads, all of them yield equivalent results. *Id.* Target highlights that the ASTM D3775 has been updated but fails to identify any pertinent reason why the updates undermine Plaintiff's allegations (they do not). *See* Ans. Br. at 22.

Target argues that use of a given thread-counting methodology is unreasonable if it is impossible to reach the advertised thread count using that methodology (Ans. Br. at 23), but it is not unreasonable if that methodology is the singular industry standard for thread counting.

23

Target has it backwards; it is its advertised thread count that is unreasonable, not the thread-counting methodology.

Target's suggestion that consumers should have been wiser to the thread counting methodology (Ans. Br. at 23) fails for the same reason: it is entirely reasonable for consumers to believe that an advertised thread count was achieved pursuant to a singular industry standard of thread counting. The impossibility of achieving the advertised thread count with the standard methodology does not render Panelli's claims "implausible," (Ans. Br. at 23); rather, it underscores the deception in a market where advertisers are increasingly advertising inflated thread counts in contravention of industry best practices and FTC guidance. *See* 3-ER 263–64, 271–73. Where Panelli's characterization of the deceptive nature of Target's advertising underscores, not undercuts, the tendency of Target's Products to deceive the consuming public, dismissal is not appropriate. *Compare with* Ans. Br. at 25, citing *Werbel v. Pepsico, Inc.*, 2022 U.S. Dist. LEXIS 13478, at *3 (N.D. Cal. July 2, 2010) (dismissal appropriate where the plaintiff's allegations of deception are patently nonsensical, such as claims that a consumer is likely to expect Cap'n Crunch's Crunch Berries cereal to contain real fruit berries).

24

#### 4. Similar thread count cases are persuasive.

Similar cases regarding falsely advertised thread count should also have informed the district court's analysis in Panelli's favor. *See Whiteside*, 108 F.4th at 784 (finding consensus among district courts as to deceptive nature of analogous advertising claims "bolstered" the plausibility of plaintiff's allegations of deception).

As discussed at length herein, Target's assertion that *Moore* forecloses allegations of deception where the challenged claim happens to be physically impossible is incorrect. Therefore, the success of materially similar theories of inflated thread count claims remains highly persuasive. *See Lancaster,* 2024 U.S. District LEXIS 54406 at *19 (finding "1249 thread count" advertisement plausibly deceived consumers where laboratory testing revealed true thread count of 233); *Bruno,* 2023 U.S. Dist. LEXIS 189709 at *7 (reasoning that consumers could be deceived by inflated thread count claims given the "significant difference in the cost of sheets with a lower thread count"); *Thomas v. Walmart Inc.*, 720 F.Supp.3d 650, 663–64 (N.D. Ill. 2024) (rejecting argument that plaintiffs must identify their thread count expert and

testing location; finding allegations of industry-standard expert testing sufficient to allege falsity).

## III. Panelli's claims are otherwise viable.

### A. Panelli alleged the "who, what, where, when, and how" of Target's deception, satisfying Rule 9(b).

To properly plead fraud with particularity under Rule 9(b) "a pleading must identify the who, what, when, where, and how of the misconduct charged, as well as what is false or misleading about the purportedly fraudulent statement, and why it is false." *Davidson*, 889 F.3d at 964. Here, Panelli alleges the:

- **Who:** Target Corporation. 3-ER-260.

- **What:** False and misleading advertising of all bedsheets sold at Target locations in California that were advertised as "100% cotton" and having a "thread count" of 600 or more (3-ER-262, 267–68), including those purchased by Panelli, which were falsely advertised as "800 thread count" "100% cotton" sheets. 3-ER-265–66.

- **When:** From four years prior to the filing of the complaint (May 24, 2024) (3-ER-277), including Panelli's September 12, 2023 purchase. 3-ER-306.

- **Where:** Target locations in California. 3-ER-262.

- **How:** Target advertised falsely inflated thread counts of bedsheets with the knowledge that consumers are willing to pay more for high thread count sheets. 3-ER-262.

- **What is false and misleading and why it is false:** Panelli's expert's testing confirmed that Target's "800 thread count" label claim on the purchased product is false because the product contains a true thread count of 288. 3-ER-267. Upon information and belief, Panelli alleged that all "100% cotton" bed sheets advertised with thread counts of 600 or higher is false and misleading because it is physically impossible for cotton threads to be fine enough to allow for 600 or more threads in a single square inch of 100% cotton fabric. 3-ER-270.

A pleading satisfies the particularity requirement of Rule 9(b) if it identifies the circumstances constituting fraud so that the defendant can prepare an adequate answer from the allegations. *Davidson*, 889 F.3d at 965. Here, Target is amply on notice that it is defending false advertising claims alleging that expert testing demonstrated that certain of its

27

thread count advertisements are literally false, and that many of its other substantially similar, high-thread-count bedsheet offerings are deceptively marketed under the same fraudulent thread counting methodology. *Maisel v. S.C. Johnson & Son, Inc.*, 2021 U.S. Dist. LEXIS 86203, at \*25 (N.D. Cal. May 5, 2021) (finding allegations pled with sufficient particularly under Rule 9(b) where plaintiff described "who, what, where, when, and how" of the consumer deception associated with defendant's misleading "plant based" labeling).

Because all Panelli's allegations of fraud tend to show the "who, what, where, when, and how" of the misconduct alleged, none of Panelli's allegations can be disregarded for failure to satisfy Rule 9(b). *See* Ans. Br. at 27, citing *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009).

### B. Panelli sufficiently alleged independent testing of the Products.

Target's argument that Panelli failed to sufficiently allege his expert testing (Ans. Br. 27) is contradicted by the FAC, which explains that an expert in the field performed testing using the accepted ASTM D3775 methodology, attached the methodology to the FAC, and described why the thread count was false—the sheets had a thread count of 168 x

28

120, or a total thread count of 288. 3-ER-267. The testing followed the standard method of utilizing the "Warp End Count and Filling Pick Count of Woven Fabric" as detailed in the ASTM D3775. *Id.* Panelli's many allegations describing his expert testing ameliorate Target's concern that Panelli relies on facts "that he has not alleged" to support his claims. *See* Ans. Br. at 27. Accordingly, none of Panelli's allegations regarding product testing should be "stripped" from the complaint. *Id.* (citation omitted).

Target's attempt to accelerate the timeline for expert disclosures should be rejected. *See* Fed. R. Civ. P. 26(a)(2)(D). Contrary to Target's argument, "nothing about Rule 9(b) suggests that plaintiff must provide specifics about the means by which the falsity was revealed." *Amin v. Subway Restaurants, Inc.*, 2022 U.S. Dist. LEXIS 243270 (N.D. Cal. July 8, 2022) (citation modified) (rejecting argument that additional information about laboratory testing was required to survive a 9(b) challenge). The fact that other plaintiffs have incidentally attached test reports to their pleadings does not conjure a new standard requiring Panelli to do the same. *See* Ans. Br. at 36–37.

29

**C.** **Panelli sufficiently alleged, upon information and belief, that certain advertised thread counts are impossible to achieve.**

Target's argument that Panelli likewise alleged no factual support for his impossibility allegation also fails. Panelli alleges it is "physically impossible for cotton threads to be fine enough to allow for 600 or more threads in a single square inch of 100% cotton fabric." 3-ER-270. As Target acknowledges, "a plaintiff may plead facts on information and belief where the belief is based on factual information that makes the inference of culpability plausible." *Waln v. Dysart Sch. Dist.*, 54 F.4th 1152, 1161 (9th Cir. 2022) (citation modified); Ans. Br. at 28–29.

As applied here, Panelli pleaded requisite facts to render the inference of culpability plausible: his FAC cites a textile expert at Consumer Reports stating, "you see 1,000 thread count sheets but you just can't get that many threads on a loom." 3-ER-271–72. The FAC cites a CEO of a luxury linen provider stating, "[t]here's a maximum number of threads that can fit into a square inch of fabric" and "[d]epending on the type of cotton used, that number is generally not more than 400." 3-ER-272. The FAC points to several other sources of exaggerated thread counts over 600 threads per square inch to further support the

30

allegations. 3-ER-272–73. Panelli also provides examples from Target's competitors who do not falsely label 100% cotton sheets with exaggerated thread counts. 3-ER-273–74. These allegations are sufficient.[4] *See* Ans. Br. at 28, citing *Neubronner v. Milken*, 6 F.3d 666, 672 (9th Cir. 1993) (allegations on information and belief are properly pleaded if they have a factual basis).

Target's attempts to undermine Panelli's factual basis for his belief do not withstand scrutiny. Target argues that Panelli's allegations about deceptive marketing of bedsheets with 1,000 thread counts say nothing about whether one can get fewer threads on a loom (Ans. Br. at 29–30), but these allegations tend to show the larger industry practice of deceptively advertising inflated thread count. Contrary to Target's

---

[4] Accordingly, Panelli's allegation of physical impossibility substantiates his challenge to *all* 100% cotton bedsheets sold at Target in California advertised as having a thread count of 600 or more. *See* 3-ER-267.

Given this bright-line determination for deception, fact-specific analysis of each product would not be required, rendering *Ang v. Bimbo Bakeries USA, Inc.*, 2014 U.S. Dist. LEXIS 34443, at *33 (N.D. Cal. Mar. 13, 2014), *Jackson v. Gen. Mills, Inc.*, 2019 U.S. Dist. LEXIS 162447, at *10 (S.D. Cal. Sep. 20, 2019), *Lopez v. Zarbee's, Inc.*, 2023 U.S. Dist. LEXIS 7868, at *20 (N.D. Cal. Jan. 17, 2023), and *McKinney v. Corsair Gaming, Inc.*, 2022 U.S. Dist. LEXIS 127906, at *34-35 (N.D. Cal. July 19, 2022) inapposite, especially to the extent that the variation between the alleged products materially altered their capacity to deceive.

31

assertion, the broader industry trend is relevant because it explains Target's incentive for the deceptive practice—to keep up with the ever-increasing thread count advertisements and drive prices ever-higher in turn.

Target also picks at Panelli's allegation that thread counts of over 400 are generally impossible under the guise that Target may be the exception to that rule. Ans. Br. at 29. Target provides no basis for this suggestion. *See Id.*

In a final attempt to undercut Panelli's allegations, Target claims that certain luxury varieties of cotton may have thread counts slightly higher than 600 (Ans. Br. at 31) but nowhere does Panelli allege that Target sells luxury pima or Egyptian cotton bedsheets. 3-ER-260–86. Panelli's allegation of impossibility is not contradicted by other facts in his complaint, rendering *Somers v. Apple, Inc.*, 729 F.3d 953, 964 (9th Cir. 2013) and *Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1139 (9th Cir. 2003) inapplicable.

32

## IV.    At a minimum, Panelli should be permitted to amend.

To assess whether leave to amend should have been granted, courts consider factors such as "bad faith, undue delay, prejudice to the opposing party, futility of amendment, and whether the plaintiff has previously amended the complaint." *United States v. Corinthian Colls.*, 655 F.3d 984, 995 (9th Cir. 2011). None of these factors supports Target, including "futility."

### A.    Amendment would not be futile.

Granting leave to amend would not prove futile. Panelli could amend in several ways to address the district court's concerns and maintain the initial scope of his claims. For example, Panelli's amendment could also contain allegations of testing regarding the unpurchased products, which would adequately support the claims of deception associated therewith. *See Gompper v. VISX, Inc.*, 298 F.3d 893, 898 (9th Cir. 2002) ("Dismissal without leave to amend is improper unless it is clear, upon de novo review, that the complaint could not be saved by any amendment.").

Panelli could also excise the "impossibility" allegations. Target does not explain how removal of the impossibility allegation would "blatantly

33

contradict" the other allegations in the FAC (because it would not). Ans. Br. at 40. Even without the impossibility allegations, Panelli would plausibly allege that Target is deceptively selling "800 thread count" "100% cotton" bed sheets which expert testing has confirmed contain a true thread count of 288, facts entirely consistent with—in fact, identical to, the challenged pleading. *See* Ans. Br. at 40, citing *Reddy v. Litton Indus.*, 912 F.2d 291, 296–97 (9th Cir. 1990).

## B. Other factors weigh in favor of granting leave to amend.

Because Panelli has not unduly delayed, exhibited bad faith, nor would amendment prejudice Target, Panelli should be permitted to amend. Target argued that Panelli has exhibited undue delay in amending because the facts sought to be added should have been adduced as part of Panelli's initial factual investigation, pointing to the fact that Panelli had the testing reports for months before he filed his initial pleading. Ans. Br. at 41, citing *Do v. Tri City Healthcare Dist.,* 2020 U.S. Dist. LEXIS 233977, at *5–6 (S.D. Cal. Dec. 11, 2020). This argument is inapplicable because Panelli vigorously disputes that production of his testing is required at the pleadings stage. *See* Section III.B, *supra.*

34

Next, Target's contention that Panelli has exhibited undue delay because he was on notice of Target's arguments regarding *Moore* ignores that Panelli had no way of anticipating the district court's novel reading of *Moore,* nor was Panelli required to prematurely concede to Target's arguments and amend prior to the district court's evaluation of the claims. *See* Ans. Br. at 42. In other words, Panelli could not have known "at the time [he] filed [his] original pleadings" that further amendment was necessary. *See* Ans. Br. at 41–42, citing *Fresno Unified Sch. Dist. v. K.U. ex rel. A.D.U.*, 980 F.Supp.2d 1160, 1176 (E.D. Cal. 2013).

As Target notes, "the case's procedural history is of particular import." Ans. Br. at 40, citing *Fresno Unified*, 980 F.Supp.2d at 1175. As such, the fact that Panelli has yet to receive an opportunity to address the district court's concerns weighs heavily in favor of granting leave. *See Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1053 (9th Cir. 2003) (reversing denial of leave to amend where "plaintiffs' allegations were not frivolous, plaintiffs were endeavoring in good faith to meet the heightened pleading requirements and to comply with court guidance, and, most importantly, it appear[ed] that plaintiffs had a reasonable chance of successfully stating a claim if given another opportunity.").

35

Target complains that it has suffered prejudice because an amendment would increase litigation costs. Ans. Br. at 42. However, as explained in *Fresno Unified*, increased costs generally are not prejudicial unless they could have been avoided, but prejudice may occur, for example, when a motion seeks to change a party's claims near trial. 980 F.Supp.2d at 1177. Given that these proceedings are in their infancy, Target has not suffered any meaningful prejudice that would hinder its ability to defend against Panelli's claims. *See Howey v. United States*, 481 F.2d 1187, 1191 (9th Cir. 1973) (finding no prejudice because "[defendant's] preparation of a defense against plaintiff's claims necessarily included a factual and legal investigation covering the same area which would be explored by [defendant] in defending against the [amended complaint]").

If this Court agrees with the district court's interpretation of *Moore*, then this Court should reverse with leave to amend so that Panelli may, for the first time, address the district court's concerns.

## CONCLUSION

For the reasons presented above, the Court should reverse and remand for further proceedings. Alternatively, the Court should reverse with instructions to permit leave to amend.

Respectfully submitted,

Dated: July 28, 2025

By: *s/ Glenn A. Danas*

Glenn A. Danas
gdanas@clarksonlawfirm.com
Brent A. Robinson
brobinson@clarksonlawfirm.com
Lauren E. Anderson
landerson@clarksonlawfirm.com
CLARKSON LAW FIRM, P.C.
22525 Pacific Coast Highway
Malibu, CA 90265
Tel: (213) 788-4050

Lawrence J. Salisbury
lsalisbury@salisburylegal.com
SALISBURY LEGAL CORP.
656 5th Ave., Ste. R
San Diego, CA 92101
Tel. (619) 241-2760

Craig W. Straub
craig@crosnerlegal.com
Zachary Crosner
zach@crosnerlegal.com
CROSNER LEGAL, P.C.
9440 Santa Monica Blvd., Ste 301
Beverly Hills, CA 90210

37

Tel. (866) 276-7637

*Attorneys for Plaintiff-Appellant*
*Alexander Panelli*

38

## CERTIFICATE OF COMPLIANCE

1.     This brief complies with the type-volume limitation of Cir. R. 32-1 because it contains 6,965 words, excluding the parts of the brief exempted by Cir. R. 32-1(c) and Fed. R. App. P 32(f).

2.     This brief complies with the typeface and type-size requirements of Fed. R. App. P. 32(a)(5) and (a)(6) because it has been prepared in proportionally-spaced typeface using Microsoft Word, in 14–point size.

Dated: July 28, 2025                    By: *s/ Glenn A. Danas*
                                             Glenn A. Danas

                                             *Attorneys for Plaintiff-Appellant*
                                             *Alexander Panelli*

## CERTIFICATE OF SERVICE

I hereby certify that on July 28, 2025, I electronically filed the foregoing with the Clerk and the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the Electronic Mail Notice List. I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.


Dated: July 28, 2025                    By: *s/ Glenn A. Danas*
                                            Glenn A. Danas

                                        *Attorneys for Plaintiff-Appellant*
                                        *Alexander Panelli*