**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| ALEXANDER PANELLI, | No. 24-6640 |
| *Plaintiff - Appellant*, | D.C. No. 3:24-cv-01218-H-DEB |
| v. | |
| TARGET CORPORATION, | |
| *Defendant - Appellee*. | OPINION |

Appeal from the United States District Court
for the Southern District of California
Marilyn L. Huff, District Judge, Presiding

Argued and Submitted March 5, 2026
Pasadena, California

Filed April 17, 2026

Before: Kim McLane Wardlaw, Ana de Alba, and Eric C. Tung, Circuit Judges.

Opinion by Judge de Alba

# SUMMARY[*]

## California Consumer Protection Laws

The panel reversed the district court's dismissal of a diversity putative consumer class action alleging that Target Corporation sold 100% cotton bedsheets with claimed thread counts of 600 or greater, which was impossible to achieve with 100% cotton textile, and remanded for further proceedings.

Claims under California's Unfair Competition Law (UCL) and Consumer Legal Remedies Act (CLRA) are assessed under the "reasonable consumer" test. Under this standard, plaintiffs must show that members of the public are likely to be deceived.

The panel held that the district court erred in concluding that plaintiff could not be deceived as a matter of law under California consumer protection laws. The district court understood *Moore v. Trader Joe's Co.*, 4 F.4th 874 (9th Cir. 2021), as holding that allegations of consumer deception based on factually impossible claims failed as a matter of law because "no consumer of any level of sophistication would reasonably interpret the label in the manner proposed by the plaintiff."

The panel held that the district court incorrectly interpreted *Moore*. The district court skipped a step by not analyzing whether the labels on Target's bed sheets were ambiguous. The panel held that the labels were not

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

ambiguous, and therefore, the facts of this case do not trigger the *Moore* framework.

Instead of applying the *Moore* framework, the panel assessed plaintiff's claims through relevant caselaw regarding literally false advertising. The panel held that plaintiff's allegations were actionable under California consumer protection laws because he alleged the challenged claim was literally false. The reasonable consumer standard under the UCL and CLRA raises questions of fact that are appropriate for resolution on a motion to dismiss only in rare situations. This is not one of those situations. Plaintiff's allegation that it is physically impossible to achieve an 800 thread count on cotton material, alone, does not require the complaint's dismissal. A reasonable consumer may still be deceived by a physically impossible claim. Thus, the district court erred in dismissing plaintiff's complaint on this basis.

---

## COUNSEL

Christen Chapman (argued), Glenn A. Danas, Brent A. Robinson, Ashley M. Boulton, and Lauren Anderson, Clarkson Law Firm PC, Malibu, California; Craig W. Straub, Michael Houchin, and Zachary Crosner, Crosner Legal PC, Beverly Hills, California; Lawrence J. Salisbury, Salisbury Legal Corp, San Diego, California; for Plaintiff-Appellant.

Grant Ankrom (argued), Dentons US LLP, Clayton, Missouri; Michael J. Duvall, Dentons US LLP, Los Angeles, California; for Defendant-Appellee.

Rebecca A. Morse and Hunter Landerholm, Deputy Attorneys General; Michele Van Gelderen, Supervising

4          PANELLI V. TARGET CORPORATION

Deputy Attorney General; Nicklas A. Akers, Senior Assistant Attorney General; Rob Bonta, California Attorney General; Office of the California Attorney General, Los Angeles, California; for Amicus Curiae State of California.

**OPINION**

DE ALBA, District Judge:

Alexander Panelli appeals the district court's dismissal of his diversity putative consumer class action against Target Corporation ("Target"). Panelli alleges that Target markets and sells some of its "100% cotton" bedsheets with claimed thread counts of 600 or greater, but that it is impossible to achieve that high of level of thread counts with 100% cotton textile. We hold that the district court erroneously concluded that Panelli could not be deceived as a matter of law under California consumer protection laws, and we therefore reverse and remand for further proceedings.

## I. Background

First, we must unfold the pertinent facts of this case. Target is a retailer that sells a variety of bed sheets of varying thread counts from numerous brands and manufacturers. In September 2023, Panelli visited a Target in southern California and made a cash purchase of a single set of queen-sized Threshold Signature sheets. The sheets were labeled as an "800 Thread Count Sheet Set" made of "100% cotton sateen." Panelli alleges that because of these representations, he "opted to purchase the sheet set for a higher price than other bedsheets without the same purported

qualities because he understood the higher price to correlate to the higher thread count."

After purchasing the bed sheet set, Panelli claims that while he thought he was getting high-thread count bedding, the reality was considerably rougher. Panelli filed a class action complaint against Target in April 2024 in San Francisco County Superior Court, alleging that Target misrepresented the thread counts of its sheets and that the actual count was much lower. Following Target's removal of this case to federal court, Panelli filed his First Amended Complaint ("FAC"), alleging violations of California's Unfair Competition Law ("UCL") and the California Consumers Legal Remedies Act ("CLRA").

More specifically, Panelli alleged that Target sells various bed sheets advertised as having a thread count of 600 or more, and that bed sheets with high thread count are more desirable and worth an extra cost because "[h]igh thread counts have come to mean high quality sheets, whether they be 'softer' or 'supple' or 'durable.'" He further claimed that independent testing showed the sheets he purchased had a thread count of only 288—not 800, as claimed on the sheet's label.[1] In explaining the drastic difference between the claimed and actual thread count, Panelli stated that "it is physically impossible for cotton threads to be fine enough to allow for 600 or more threads in a single square inch of 100% cotton fabric."

In August 2024, Target filed a motion to dismiss all of Panelli's claims pursuant to Rules 12(b)(6) and 9(b) for

---

[1] In his FAC, Panelli explained that the testing was performed in January 2024 at a lab in the United States and by an expert "knowledgeable in thread counting methodology." He further stated that the expert used the "ASTM D 3775" method for measuring thread count.

failure to state a claim, and to strike certain class action allegations pursuant to Rule 12(f). Target argued that Panelli (1) failed to adequately allege facts to support his claim that the product he purchased does not have an 800 thread count as labeled; (2) lacked standing to challenge the products he did not purchase; (3) failed to sufficiently plead the inadequacy of legal remedies under the CLRA and equitable remedies portion of the CLRA; (4) improperly demanded punitive damages under the CLRA; and (5) failed to exclude putative class members subject to an arbitration agreement and class action waiver. In its motion, Target also requested the district court deny leave to amend in light of Panelli's previous opportunity to amend and because of Panelli's alleged undue delay in addressing the perceived deficiencies in his FAC.

Panelli opposed Target's motion, arguing that he sufficiently described the expert testing, methodology, and findings underlying his allegations of falsity. Panelli also emphasized that "several credible sources" supported his allegations that it is impossible for cotton threads to be fine enough to allow for more than 600 threads in a single square inch of 100% cotton fabric. Additionally, Panelli challenged Target's contentions that he lacked standing to challenge products he did not purchase; that the district court lacked equitable jurisdiction; and that the class definition should exclude online purchasers.

In October 2024, the district court granted Target's motion to dismiss, dismissing all of Panelli's claims with prejudice. The district court concluded that Target's representations are not misleading to a reasonable consumer as a matter of law under this Court's precedent in *Moore*, where we held that dismissal was warranted in that case because a reasonable consumer would be dissuaded by

contextual information from reaching an implausible interpretation of the claims on the front label of the challenged product. *Moore v. Trader Joe's Co.*, 4 F.4th 874, 884 (9th Cir. 2021).

In accordance with its interpretation of *Moore*, the district court found dispositive that Panelli alleged it was "physically impossible to achieve" the thread count claimed on the bed sheet's label. Citing *Moore*, the district court reasoned that "[n]o reasonable consumer would interpret [Target's] 100% cotton bedsheet advertising and labeling 'as promising something that is impossible to find.'" *See* 4 F.4th at 883. The district court also distinguished this case from the other thread count cases Panelli cited on the grounds that "[n]one of the complaints at issue in these decisions appear to have contained an allegation that the thread count representations at issue were physically impossible to achieve." In sum, the district court determined that Panelli's "representations regarding the thread count of [Target's] bed sheets are not misleading to a reasonable consumer in the manner proposed by [Panelli] as a matter of law," and therefore he failed to adequately state a claim under California's consumer protection laws.

The district court also denied Panelli leave to amend, reasoning it was impossible for Panelli to amend his complaint without contradicting his initial allegation that it is physically impossible for 100% cotton fabric to have a thread count of 600 or more. Because the district court dismissed all of Panelli's claims as a matter of law without leave to amend, it did not reach Target's other arguments. Panelli timely filed his notice of appeal.

8                 PANELLI V. TARGET CORPORATION

## II.  Jurisdiction and Standard of Review

We have jurisdiction pursuant to 28 U.S.C. § 1291.  We review de novo the district court's grant of a motion to dismiss under Rule 12(b)(6), and we may affirm the dismissal on any ground supported by the record.  *Kwan v. SanMedica Int'l*, 854 F.3d 1088, 1093 (9th Cir. 2017).  At the pleadings stage, we accept all factual allegations in the complaint as true and construe them in the light most favorable to the nonmoving party.  *Skilstaf, Inc. v. CVS Caremark Corp.*, 669 F.3d 1005, 1014 (9th Cir. 2012).

## III.  Discussion

We must determine whether the district court erroneously concluded that Panelli could not be deceived as a matter of law under California consumer protection laws where he alleged that it is factually impossible to achieve the thread counts advertised on the sheets Target sold.[2]  "California's UCL . . . and CLRA require basic fairness in advertising and permit a civil remedy against those who deceive consumers.  Those laws prohibit not only false advertising, but also advertising that is 'either actually misleading or which has a capacity, likelihood or tendency

---

[2] Target argues that the panel should not consider Panelli's appeal because he waived any challenges to the application of *Moore* by failing to address the argument before the district court.  We disagree.  Panelli did not concede the *Moore* argument before the district court, nor is he raising a new argument on appeal.  The matter was sufficiently raised and argued such that the trial court ruled on *Moore* and engaged with Panelli's arguments against the motion to dismiss.  *See Ahanchian v. Xenon Pictures, Inc.*, 624 F.3d 1253, 1260 n.8 (9th Cir. 2010) (reasoning that the waiver rule "'does not apply where the district court nevertheless addressed the merits of the issue' not explicitly raised by the party") (quoting *Blackmon–Malloy v. U.S. Capitol Police Bd.*, 575 F.3d 699, 707 (D.C. Cir. 2009))).  Thus, Panelli preserved his arguments for appeal.

to deceive or confuse the public.'" *Whiteside v. Kimberly Clark Corp.*, 108 F.4th 771, 777 (9th Cir. 2024) (quoting *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008)).

UCL and CLRA claims are assessed under the "reasonable consumer" test. *Williams*, 552 F.3d at 938. Under this standard, plaintiffs must show that members of the public are "likely to be deceived." *Id.* (omitting citation). Specifically, the reasonable consumer standard requires "more than a mere possibility" that the challenged advertising "might conceivably be misunderstood by some few consumers viewing it in an unreasonable manner." *Ebner v. Fresh, Inc.*, 838 F.3d 958, 965 (9th Cir. 2016) (citing *Lavie v. Procter & Gamble Co.*, 105 Cal. App. 4th 496, 508 (2003)). "Rather, the reasonable consumer standard requires a probability 'that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled.'" *Id.* (citing *Lavie.*, 105 Cal. App. 4th at 508).

On appeal, Panelli contends that the district court erroneously interpreted *Moore* "as ruling that any time a plaintiff alleges that a company's advertising claim is factually impossible, the allegations of deception are, categorically, implausible" under the reasonable consumer standard. We agree, and we accordingly hold that the district court misinterpreted *Moore* and erred in dismissing Panelli's claims on that basis.

## A. The district court misinterpreted *Moore.*

The district court understood *Moore* as holding that allegations of consumer deception based on factually impossible claims fail as a matter of law because "no consumer of any level of sophistication would reasonably

interpret the label in the manner proposed by the plaintiff." This interpretation is incorrect and overlooks analytical steps required under *Moore*. Because the district court's ruling hinged on its erroneous understanding of our caselaw, we now clarify the applicable law.

In *Moore*, we affirmed the district court's dismissal on the pleadings in a consumer protection case because the challenged label of "100% New Zealand Manuka Honey" on Trader Joe's store-brand Manuka honey was literally true under the Food and Drug Administration ("FDA") Guidelines [3] and was not likely to deceive a reasonable consumer into believing the product contained only honey sourced from the Manuka flower. 4 F.4th at 876–77. Critically, we first determined that, despite its literal truth, there was "some ambiguity as to what '100%' mean[t] in the phrase, '100% New Zealand Manuka Honey.'" *Id.* at 882; *see also McGinity v. Procter & Gamble Co.*, 69 F.4th 1093, 1097–98 (9th Cir. 2023) (describing *Moore*'s analytical approach). In the context of the product in question, "100% could be a claim that the product was 100% Manuka honey, that its contents were 100% derived from the Manuka flower, or even that 100% of the honey was from New Zealand." *Moore*, F.4th at 882. Because of the ambiguity of the claim on the front label of the product, "reasonable consumers would necessarily require more information before they could reasonably conclude Trader Joe's label promised a honey that was 100% derived from a single, floral source." *Id.* Such additional information could be information on the back label of the product, the relative

---

[3] FDA Guidelines permit labeling honey with the name of its "chief floral source," which Trader Joe's had done. *Moore*, F.4th at 877 (citation omitted).

price of the product, or general knowledge about how the product is made. *Id.* at 882–85; *see also McGinity*, 69 F.4th at 1097; *Whiteside*, 108 F.4th at 778–79. In *Moore*, such contextual clues included "(1) the impossibility of making a honey that is 100% derived from one floral source, (2) the low price of Trader Joe's Manuka Honey, and (3) the presence of the '10+' on the label." 4 F.4th at 883. We explained that these facts "would quickly dissuade a reasonable consumer from the belief that Trader Joe's Manuka Honey was derived from 100% Manuka flower nectar." *Id.* at 882.

Here, the district court's application of *Moore* did not follow this framework. First, the district court skipped a step by not analyzing whether the label was ambiguous and therefore required the reasonable consumer to account for outside information to interpret the label's claim. *See Moore*, 4 F.4th at 882. Without the required finding of ambiguity, the district court was not permitted to pull back the covers on Target's claim and account for outside, contextual information in its reasonable consumer analysis. Moreover, *Moore* is inapposite because the challenged claim in this case is *not* ambiguous. The thread count listed on the bed sheets purports to communicate an objective measurement of a physical aspect of the product. In other words, the thread count "plausibly conveys a concrete and unambiguous meaning to a reasonable [consumer]." *Whiteside*, 108 F.4th at 782. Under the *Moore* framework, a reasonable consumer would therefore not need other information to determine what the claim was representing. *See id.* ("[F]ront-label ambiguity is determined not by whether a consumer 'could' look beyond the front label, but whether they *necessarily* would do so.").

12          PANELLI V. TARGET CORPORATION

Target argues that because Panelli's FAC concedes there are multiple methods for thread counting, there are necessarily multiple ways to interpret the "800 Thread Count" representation. But there is a loose thread in Target's argument: it is unlikely that a reasonable consumer would know there are multiple thread-counting methodologies. Consumers are not "expected to look beyond misleading representations on the front of the box" to discover the truth of the representations being asserted. *Williams*, 552 F.3d at 939. In fact, "consumers are likely to exhibit a low degree of care when purchasing low-priced, everyday items," like bed sheets sold by a mass-market retailer. *See Moore*, 4 F.4th at 884 (citation omitted). Unlike in *Moore*, where we found a reasonable consumer likely knows "it is impossible to exercise complete control over where bees forage" to produce honey from a single floral source, a reasonable consumer is unlikely to be familiar with the intricacies of textile manufacturing. *See id.* at 883–85. Realistically, a reasonable consumer's knowledge of textile manufacturing is likely limited to the fact that a higher thread count listed on packaging indicates a higher quality sheet. When strolling the bedding aisle of Target and comparing products, a consumer is likely to take the label for what it says—in this instance, that the bed sheets are of 800 thread count. We thus reject Target's argument that the thread counts on the labels are susceptible to different interpretations. We find that the claims on the labels of the bed sheets Target sold are not ambiguous, and therefore, the facts of this case do not trigger the *Moore* framework. *Id.* at 882–85; *see also McGinity*, 69 F.4th at 1097–99.

## B. Panelli has plausibly alleged falsity under California's consumer protection laws.

Instead of applying the *Moore* framework for resolving ambiguous advertising claims, we assess Panelli's claims through the relevant caselaw regarding literally false advertising. Allegations of literal falsity are the most actionable variety of consumer protection claims on California's spectrum of actionability. *See Shaeffer v. Califia Farms, LLC*, 44 Cal. App. 5th 1125, 1137–38 (2020) (cleaned up).

In applying California consumer protection laws, numerous cases have upheld the principle that members of the public are likely to be deceived by advertising that is literally false. *See Moore v. Mars Petcare US, Inc.*, 966 F.3d 1007, 1017 (9th Cir. 2020) ("'Literal truth can sometimes protect a product manufacturer from a misleading claim, but it is no guarantee,' whereas 'there is no protection for literal falseness.'") (citing *Brady v. Bayer Corp.*, 26 Cal. App. 5th 1156, 1166 (2018)); *see also Skinner v. Ken's Foods, Inc.*, 53 Cal. App. 5th 938, 948 (2020). In *Brady*, a California court of appeal held that the plaintiff's UCL and CLRA allegations that "One A Day"-branded vitamin gummies were deceptive could survive demurrer because the gummies actually had a serving size of two gummies daily. *Brady*, 26 Cal. App. 5th at 1166–67, 1172. Notably, the court found the brand name had the "capacity, likelihood or tendency to deceive or confuse the public" because "[i]n the context of its gummie product, the One A Day brand name is *literally false*." *Id.* at 1172–73 (emphasis added). Additionally, in *Davidson*, we held that the plaintiff adequately alleged that the defendant's "use of the word 'flushable' was false because the . . . wipes [the plaintiff] purchased did not disperse as a truly flushable product would have." *Davidson*

*v. Kimberly-Clark Corp.*, 889 F.3d 956, 965 (9th Cir. 2018). Weaving this caselaw together, we find Panelli's allegations are similarly actionable under California consumer protection laws because he likewise alleges the challenged claim is literally false. *See McGinity*, 69 F.4th at 1097 ("The California Supreme Court has recognized that [the UCL and CLRA] prohibit explicitly false advertising and advertising that is 'either actually misleading[,] or which has a capacity, likelihood[,] or tendency to deceive or confuse the public.'") (quoting *Kasky v. Nike, Inc.*, 45 P.3d 243, 250 (2002)).

Admittedly, a claim may be so clearly false that no reasonable consumer would be deceived by it. Furthermore, "where plaintiffs base deceptive advertising claims on unreasonable or fanciful interpretations of labels or other advertising, dismissal on the pleadings may well be justified." *Moore*, 4 F.4th at 882–83 (omitting internal citation and quotation marks). For instance, in *Werbel*, a district court dismissed as "nonsense" a plaintiff's claims that members of the public were likely to be deceived into believing that the cereal Cap'n Crunch derives nutrition from actual fruit by the label's reference to "berries." *Werbel ex rel. v. Pepsico, Inc.*, No. C 09-04456 SBA, 2010 WL 2673860, at \*3 (N.D. Cal. July 2, 2010) (finding "[i]t is obvious from the product packaging that no reasonable consumer would believe that Cap'n Crunch derives any nutritional value from berries."). This exception does not apply in this case because Panelli's claims are not unreasonable or fanciful. While a vast majority of consumers are, for instance, familiar with the biological nature of bees so that it would be unreasonable for a consumer to think honey was sourced from a single type of flower, *Moore*, 4 F.4th at 883–85, they likely would not have that same kind of baseline knowledge about textile

manufacturing. Neither common knowledge nor common sense would cause a Target shopper to question the veracity of the claim on the bed sheet's label that the product was of 800 thread count. *See Lavie*, 105 Cal. App. 4th at 509–10 ("[A] 'reasonable consumer' need not be 'exceptionally acute and sophisticated.' . . . . Nor need a reasonable consumer necessarily be wary or suspicious of advertising claims.") (omitting internal citation); *see also Kahn v. Walmart Inc.*, 107 F.4th 585, 595–96 (7th Cir. 2024) ("Our focus in applying the reasonable consumer standard must include 'how real consumers understand the carefully crafted messages aimed at them.'") (omitting internal citation). Thus, Panelli's allegations do not fall into the narrow category of non-actionable claims of literal falsity under California law.

Notably, as the State and Panelli point out, allowing the district court's reading of *Moore* would create an aberrant framework for analyzing literally false advertising. Under the district court's reading, manufacturers would face no liability for false advertising so long as the claims were wholly false—regardless of whether this falsity is generally knowable to consumers. As the State elaborates in its amicus brief, "accepting the district court's reasoning would, for instance, allow one retailer to advertise 288 thread count sheets as '800 thread count' sheets, while subjecting a competitor to liability for advertising the very same sheets as '500 thread count' sheets" because a 500 thread count sheet is not impossible to achieve. Such a rule would create an untenable and bizarre situation where partially false advertising would be actionable under California's consumer protection laws, but wholesale falsity would not. This dynamic would undermine the "broad" purpose of California's consumer protection laws "to reach any novel

or creative scheme of false or misleading advertising that a deceptive business may devise," and it therefore cannot stand. *See Nationwide Biweekly Admin., Inc. v. Superior Ct.*, 462 P.3d 461, 475–476 (2020).

Finally, the reasonable consumer standard applied under the UCL and CLRA "raises questions of fact that are appropriate for resolution on a motion to dismiss only in 'rare situations.'" *Reid v. Johnson & Johnson*, 780 F.3d 952, 958 (9th Cir. 2015) (quoting *Williams*, 552 F.3d at 938) (cleaned up); *see also Whiteside*, 108 F.4th at 778. This is not one of those situations. Panelli's allegation that it is physically impossible to achieve an 800 thread count on cotton material, alone, does not require the complaint's dismissal. As we previously explained, a reasonable consumer may still be deceived by a physically impossible claim. *See Chapman v. Skype, Inc.*, 220 Cal. App. 4th 217, 226–27 (2013).[4] Thus, the district court erred in dismissing Panelli's complaint on this basis.

## IV.  Conclusion

We conclude that the district court erroneously dismissed this case, and we accordingly **REVERSE and REMAND** for further proceedings consistent with this opinion.

---

[4] Because we hold that the district court's ruling hinged on its legally erroneous interpretation of *Moore*, we decline to address the other arguments presented in Panelli and Target's briefs.